## PAULINE OIL & GAS CO. v. MUTUAL TANK LINE CO.

No 16272—Opinion Filed March 2, 1926.

Rehearing Denied May 25, 1926.

### 1. Corporations — Foreign Corporations — "Doing Business."

A foreign, nonresident corporation, which leases and delivers its tank cars, outside of this state, to a company which used the cars within the state of Oklahoma, will not result in the foreign corporation doing business in the state of Oklahoma, contrary to the terms of sections 5433 and 5434, C. O. S. 1921.

### 2. Same.

It was the lessee who engaged in business in the state of Oklahoma in this case, and not the lessor within the meaning of sections 5433 and 5434, supra.

### 3. Judgment Sustained.

Record examined; held, to be sufficient to support judgment for the plaintiff.

(Syllabus by Williams, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Oklahoma County; O. L. Price, Judge.

Action by the Mutual Tank Line Company against the Pauline Oil & Gas Company. Judgment for plaintiff, and defendant brings error. Affirmed.

J. B. A. Robertson and Ross N. Lillard, for plaintiff in error.

Cottingham, McInnis & Green, for defendant in error.

Opinion by WILLIAMS, C. The parties in this case will be referred to as they appeared in the court below, inverse to the order in which they appear here.

In this case the plaintiff, a foreign corporation, sued for an amount claimed to be due it for the use of certain tank cars. A defense was interposed by answer based upon the law relating to foreign corporations, and especially upon sections 5433 and 5434, C. O. S. 1921, which forbids any corporation doing business in the State to maintain an action in any of the courts thereof without first filing certain statements with the Secretary of State. A jury was waived and the case was submitted to the court. Judgment was rendered for the plaintiff, and defendant brings error. The defendant in his brief says:

"Plaintiff in error relies upon one proposition only to secure a reversal of this judgment, to wit: That the Mutual Tank Line Company, being a foreign corporation and not having complied, in any respect, with the laws of Oklahoma authorizing a foreign corporation to do business in this state, is to be precluded and not permitted to maintain an action in the courts of this state."

The record shows a noncompliance with the laws of Oklahoma in so far as domestication is concerned; also, that on the 1st day of March, 1923, the plaintiff leased to the defendant 40 tank cars for a period of six months; that all of said cars were delivered by the plaintiff to the defendant in Sherman, Tex., and were returned by defendant to plaintiff at the same place; that this was the only contract plaintiff had within the state of Oklahoma.

On this point the witness Drake, on cross-examination, testified:

"Q. Is this the only contract you had in the state of Oklahoma? A. Within the state of Oklahoma, it is."

As to the place where, or how, the consideration for the use of said cars was paid, as well as the place where the contract was executed, the record is mute.

In all cases cited by counsel for defendant in his brief, not one is from Oklahoma. Counsel cites the case of John Deere Plow Co. v. Spatz, 69 Kan. 255, 76 Pac. 863, and quotes from the opinion as follows:

"Therefore, although a single act, it constituted a doing of business in the state within the meaning of the statute, while several acts of a different nature might not have had that effect."

Just preceding the above quotation from the case cited, we find the following language (quoted from another Kansas Case, Commission Co. v. Haston, 74 Pac. 1028):

"Isolated, independent transactions in this state incidentally necessary to the business of a foreign corporation conducted at its domicile, fully completed before action commenced, will not prevent recovery in the courts of this state by such corporation under section 1283, Gen. St. 1901, when no repetition of such acts is in contemplation, and the territory of the state is not being made the basis of operations for the conduct of any part of the corporation's business at the time the suit is begun."

The second paragraph of the syllabus in the above case reads as follows:

"It was not the legislative intent that foreign corporations maintaining resident agents in this state through whom orders for the purchase of goods are solicited, and to whom such goods are sent for delivery to the buyers, should be exempted from the requirements provided by such section."

"Isolated, independent transactions * * *

incidentally necessary to the business of a foreign corporation conducted at its domicile fully completed before action commenced", says the court, will not defeat the right to maintain an action.   As shown by the record in this case, this was the only transaction had by the plaintiff in the state of Oklahoma. The same was "fully completed," and no showing was made that the plaintiff contemplated any future activities within the state.   The syllabus in the case above cited shows that the John Deere Plow Company had invaded the territory of Kansas; that it had stationed an agent therein, and not only had solicited business in the past, but contemplated soliciting business in the future.

In the case of Kansas City Structural Steel Co. v. State of Arkansas, Supreme Court Advance Opinions 1925-1926, 70 L. Ed. 53, cited by counsel for defendant, the facts were that the Structural Steel Company contracted with officials of the state of Arkansas for the construction of a steel bridge.   The contract was signed in Arkansas.   The steel company sublet the major part of the work, and later the company secured permission to do business in the state of Arkansas.   However, before such permission was obtained, the greater part of the work sublet had been completed.   The steel company had made certain shipments of steel from Kansas City, Mo., to itself in Arkansas, for use in the construction of the bridge, and these materials had been delivered to the subcontractor for use in the performance of the work done by it.   In passing upon the appeal of the Structural Steel Company, the Supreme Court of the United States, said:

"We need not consider whether, under the circumstances shown, the making of the bid, the signing of the contract, and execution of the bond would be within the protection of the commerce clause, if these acts stood alone.   But it is certain that, when all are taken together, the things done by plaintiff in error in Arkansas, before obtaining the permission, constitute or include intrastate business.   The delivery of the materials to the subcontractor was essential to the building of the bridge, and that was an intrastate and not an interstate transaction.   The fact that the materials had moved from Missouri into Arkansas did not make the delivery of them to the subcontractor interstate commerce.   So far as concerns the question here involved, the situation is the equivalent of what it would have been if the materials had been shipped into the state and held for sale in a warehouse, and had been furnished to the subcontractor by a dealer.   We think it plain that the plaintiff in error did business of a local and intrastate character in Arkansas before it obtained permission."

In the case of Tomson v. Iowa State Traveling Men's Ass'n, 88 Neb. 399, 129 N. W. 529, cited by counsel for defendant, the defendant was a fraternal insurance company, chartered under the laws of Iowa and soliciting business in the various states of the Union.   One Latshaw, upon whom service of summons was made, as well as other members of the order, was soliciting business for the defendant company in the state of Nebraska.   From December 6, 1902, to December 5, 1903, the defendant company paid accident claims to 50 Nebraska certificate holders, and the next year it paid accident claims to an additional 50 residents of Nebraska, and during all of said time, was soliciting and receiving memberships in the state of Nebraska through members of the order.   Under these facts, in proof in the case, the court held the defendant was doing business in the state of Nebraska.   The other cases cited by counsel for defendant are of similar import, and we deem it unnecessary to analyze them further.

In the case of Harrell v. Peters Cartridge Co., 36 Okla. 684, 129 Pac. 872, it is said:

"Where a foreign manufacturing corporation, having * * * a contract with a domestic corporation, whereby it agrees to handle the produce of the foreign corporation, sends its traveling agents into the domestic state for the purpose of advertising the goods, and pushing the sales by giving exhibitions and demonstrations of the merits of such goods, and by assisting the agents of the domestic corporation in getting customers and orders for such goods, such orders to be filled by the domestic corporation out of its stock, such acts or transactions on the part of such agents do not constitute "doing business' within the state by the foreign corporation, and service of summons upon the Secretary of State is not valid service on the foreign corporation."

In the case of Dr. Koch Vegetable Tea Co. v. Schumann, 42 Okla. 60, 139 Pac. 1133, the first paragraph of the syllabus is as follows:

"A nonresident corporation, engaged in the manufacture and sale of certain proprietary preparations, toilet articles, etc., entered into a written contract with a resident of Oklahoma, whereby it was agreed that certain of its products should be sold and delivered f. o. b. at a point outside the state, and it should be shipped into Oklahoma and resold at retail within certain designated territory. Held:   this did not constitute 'transacting business' in this state within the provisions of Rev. Laws 1910, section 1335, nor incur the penalty prescribed in section 1338, Rev. Laws 1910."   See, also, J. R. Watkins Medical Co. of Winona, Minn., v. Coombs, 66 Okla. 126, 166 Pac. 1072).

In the case of Dennison v. Phipps, 87 Okla. 299, 211 Pac. 83, it was held that, by the phrase "transacting business" is meant the doing or performing of a series of acts which occupy the time, attention, and labor of men for the purpose of a livelihood, profit, or pleasure; but the doing of a single act pertaining to a particular business would not be considered carrying on, transacting, or doing business as contemplated in such sections. To the same effect is Barnett v. Aetna Explosive Co., Inc., 96 Okla. 132, 220 Pac. 874.

In the case of Huston Canning Co. v. Virginia Can Co. (Ala.) 100 South. 104, the Huston Canning Company made a lease contract for a term of three years for the lease of machinery for a stipulated rental. The machinery was shipped from Virginia to Alabama, to the last-named company. After the termination of the lease the machinery was returned to the plaintiff with the freight prepaid. In passing upon the question, the court said:

"In 12 Corpus Juris 37, sec. 36, headnote 35, we find the following: 'Under some circumstances the business of leasing chattels may constitute commerce.' In these contracts the machines are leased by the foreign corporation to the domestic corporation to be used by the lessee for three years in its factory in this state. The machines are shipped by the lessor from Virginia to the lessee in Alabama, the lessee is to pay the freight, and the annual rental is to be paid when the machines are delivered. After the termination of the leases the machines are to be returned to the lessor in Virginia by the lessee, freight prepaid by the lessee. The lessee is to keep the machines during the lease fully insured in favor of the lessor against loss by fire. The leasing of these machines under the contract and the facts constitute interstate commerce. Similar contracts of leasing chattels by a resident of one state to a resident of another state have been held to constitute interstate commerce, and the lessor was not thereby engaging in business or transacting business in the state of the lessee, which made the lessor subject to the conditions imposed by the statutes of the state of the lessee. 12 Corpus Juris 37, headnote 33; U. S. v. U. S. Mach. Co. (D. C.) 234 Fed. 127; Mergenthaler Co. v. Hays (Mo. App.) 181 S. W. 1183; Bogata Merc. Co. v. Outcault Adv. Co. (Tex. Civ. App.) 184 S. W. 333." (To the same effect is Eatonton Cotton Mills v. Goodyear Tire & Rubber Co., 208 N. Y. S. 218.)

The Mutual Tank Line Company did not perform one act in the state of Oklahoma. It did not invest any capital within the state, and did not maintain an agent or office within this state. The cars were delivered to the Pauline Oil & Gas Company at Sherman, Tex., and they were returned to Sherman, Tex., by the Pauline Oil & Gas Company.

For the reasons given herein, upon the authorities, the judgment of the trial court should be and is affirmed.

By the Court: It is so ordered.

Note.—See under (1) 14a C. J. p. 1283 § 3991 (Anno); anno. 10 L. R. A. (N. S.) 693; 12 R. C. L. pp. 69, 70; 2 R. C. L. Supp. p. 1385 4 R. C. L. Supp. p. 744; 5 R. C. L. Supp. p. 632. (2) 14a C. J. p. 1272 § 3978 (Anno). (3) 4 C. J. p. 1129 § 3122.