BLUEFIELD PRODUCE & PROVISION COMPANY *et al. v.* CITY OF BLUEFIELD

(No. 8685)

Submitted January 25, 1938. Decided April 9, 1938.

112

*Sanders & Day,* for appellants.
*Luther G. Scott,* for appellee.

Fox, Judge:

This suit in equity was instituted in the circuit court of Mercer County by Bluefield Produce & Provision Company, Bluefield Grocery Company, Sublette Feed & Supply Company, Peerless Wholesale Grocery Company and F. W. Udy & Company, operators of wholesale grocery and feed stores in the City of Bluefield, for the purpose of enjoining the City of Bluefield and its board of directors and officers from cancelling and revoking the licenses under which the plaintiffs are now operating their stores in said city.

From a decree dismissing plaintiffs' bill of complaint, they prosecute this appeal. The suit was tried solely on the bill of complaint and answer and there are no disputed facts.

The question here presented involves the construction and validity of an ordinance of the City of Bluefield, requiring a license tax for the operation, maintenance, opening, or establishment of stores within the corporate

limits of the city, the pertinent parts of which are as follows:

> "Section 1. It shall be unlawful for any person, firm, corporation, association, or co-partnership to operate, maintain, open or establish any store within the corporate limits of the City of Bluefield without first having obtained a license so to do from the City Clerk as hereinafter provided.
>
> \* \* \* \* \* \* \* \* \*
>
> "Sec. 4. Every person, firm, corporation, association or co-partnership opening, establishing, operating or maintaining a store or stores within said corporate limits shall pay to said City a license tax for each such store for the license above required on the following basis:
>
> \* \* \* \* \* \* \* \* \*
>
> "(b) If such store be one in which goods, wares, or merchandise of any kind or character are sold at wholesale, said tax shall be equal to one-sixth of 1% of the gross proceeds of sales of such store, payable as hereinafter provided;
> \* \* \* ."

The defendants claim that sub-section (b) of Section 4 legally authorizes the application of the license tax imposed on the basis of the gross proceeds of all sales made by the plaintiff corporations, whether made within or outside the corporate limits of the City of Bluefield, or within or outside this state. On the other hand, the plaintiffs say that under a proper construction of the ordinance, its terms only apply to sales made solely within the corporate limits of the city; and that if the ordinance does not lend itself to such construction, it is invalid to the extent that its terms purport to apply to sales made outside the corporate limits of the city.

Bluefield Produce & Provision Company operates a wholesale grocery and feed store in the City of Bluefield, and a like store in the City of Mullens; Bluefield Grocery Company operates one wholesale store in Blue-

field and a branch store in Iaeger; and Sublette Feed & Supply Company, Peerless Wholesale Grocery Company and F. W. Udy & Company each operate a wholesale grocery and feed store in the City of Bluefield. The plaintiff corporations employ a common method of making sales, delivering merchandise and collecting accounts. This method of doing business is alleged in the bill of complaint and admitted in the answer as follows:

At each of the stores, a stock of merchandise is kept and salesmen are employed for the purpose of soliciting sales of merchandise. The salesmen travel in various cities, towns and counties in this and other states, and make sales for their employers of merchandise to be delivered to the purchasers at their respective places of business. Upon making a sale, each salesman notifies the store to which he is attached and upon the advice of sale having been received, the merchandise, without additional cost, is delivered to the purchaser at his place of business in trucks belonging to the vendor corporations. The cost of such delivery is paid by the vendor. The sale agreements made by the salesman with the purchaser specify the kind and quantity of merchandise to be delivered and do not designate the particular or specific merchandise. All merchandise is shipped from the Bluefield stores of the plaintiffs and paid for at said stores, except that merchandise shipped from the Mullens store of Bluefield Produce & Provision Company is paid for at said store which forwards the purchase price to the principal office of said Bluefield Produce & Provision Company. In like manner, merchandise shipped from the Iaeger store of Bluefield Grocery Company is paid for at said store and the proceeds of sale are remitted to its parent store. The bill of complaint clearly alleges and the answer admits that "it is always distinctly understood and agreed by and between" the plaintiffs and their customers that title to the merchandise will not pass until delivery. The allegations in the bill with respect to sales are somewhat confusing. It is alleged that traveling salesmen make sales, and this is followed by the

allegation that sales are consummated by delivery. Obviously there can be only one sale. What it all amounts to is that orders for merchandise are taken by the salesmen, which are forwarded to the stores, and delivery and sale consummated.

Plaintiffs' counsel contend that the section of the ordinance under appraisement should be construed to apply solely to sales made within the corporate limits of the city, because (1) a municipal corporation, in the enactment of ordinances dealing with the exercise of its governmental activities, is presumed to act entirely within its corporate limits; (2) to construe the ordinance so as to apply to all sales by the plaintiff corporations would embrace sales which are made in the course of interstate commerce and therefore not subject to the tax; and (3) inasmuch as under the method of doing business, the title does not pass until delivery of the merchandise at the customer's place of business, the sale, therefore, is made at the time and place of delivery; and (4) otherwise a tax could be imposed on the same sale by other municipal corporations, if made within their corporate limits, thereby causing double taxation on the same sale.

The right to impose the license tax sought to be avoided rests in the first instance upon Section 1, Article X of the Constitution, under which the legislature is given authority to tax privileges, franchises and incomes of persons and corporations, and to classify and graduate the tax on all incomes according to the amount thereof; and upon the authority of Code, 8-4-13, which provides that "Whenever anything, for which a state license is required, is to be done within such town the council may, unless prohibited by law, require a municipal license therefor, and may impose a tax thereon for the use of the town." It is contended that under Code, 11-13-2, sub-section 2c, known as the gross sales tax, and under Code, Chapter 11, Article 13a, known as the chain store tax, the legislature has exercised its powers under the constitutional provision aforesaid, and, therefore, the municipality may do so, and that

it has exercised its right in this respect under its charter, Chapter 2, Acts 1921, Municipal Charters. The authority of the municipality to impose a license tax based upon gross sales was upheld by this court in *Mullens* v. *City of Huntington*, 117 W. Va. 740, 188 S. E. 120, and while that case applied to sales made by retail stores, it is not believed that any different rule should apply to sales made at wholesale. The right to impose the tax is not, as we understand it, challenged so long as the same is confined to sales made within the city. The administration of the ordinance is questioned because it is said that the city seeks to impose the tax provided for therein not only on sales made within the city, but on sales made outside the city, both within and outside this state.

It will be observed that under the questioned ordinance, it is made unlawful to operate, maintain, open or establish a store within the corporate limits of the city without having first obtained a license therefor; then follows the provision that for the opening, establishment, operation or maintenance of a store there shall be paid to the city a license tax of one-sixth of one per cent of the gross proceeds of the sales of such store. It is clear that what is sought is not the taxing of particular sales, but the privilege of operating and maintaining stores. It is true that the aggregate of the sales of such stores is made the basis for computing the amount of the license tax to be paid, but it is not a sales tax in the sense that it is imposed upon each transaction. It is the privilege of doing business in the city that is sought to be taxed, and all sales transactions having their origin in the city, even though followed up and consummated outside the city, may properly be considered and enter into the total of the gross proceeds of sales of such store, unless, as to sales consummated by actual delivery to purchasers residing outside this state, the tax may become within the prohibition against the imposition of a burden on interstate commerce. We think undue prominence is given to the methods employed by the plaintiffs in their business, especially the stress laid on the passing

of title to merchandise delivered from their respective places of business in the city. We are not convinced that, as to sales made within this state, and outside the city by the plaintiff, the methods employed by them remove the proceeds thereof from the "gross proceeds of sales" of the stores from which the goods were originally taken and delivered to customers. Presumably the sales were, in contemplation of tax laws, made from established places of business in Bluefield, because otherwise the plaintiffs, as to all sales made other than at their established place of business, would come within the provision of Code, 11-12-57, as amended by Acts, 1935, Ch. 88, known as the Hawkers and Peddlers Act, wherein it is provided that:

> "All persons, firms or corporations who do have and keep a regular place of business in this state with a stock of goods, wares or merchandise thereat for sale, and whether or not said place is open at all times during the usual business hours for business, who shall, elsewhere than at such regular place of business, personally, or through their agents, offer for sale, or sell, and at the same time of such offering for sale, deliver goods, wares and merchandise, shall also be deemed hawkers or peddlers as aforesaid; * * * ."

Plaintiffs will scarcely concede that they come within the statute above quoted, and if they do not come within that statute, then merchandise sold to their customers, delivered from their principal place of business within the state must, for purposes of taxation, be considered as having been sold in Bluefield, and not at points where it may have been delivered outside the city. Under the act which imposes a tax upon the privilege of doing a particular class of business in the city, of what concern is it that, in conducting such business from a fixed and established place, the actual passing of title of goods delivered therefrom may be made to depend upon actual physical delivery to a customer at a different point, or

the payment of the purchase price, or some other condition. It is well known that many merchants, engaged in different lines of business, sell goods under conditional sales contracts, whereby title does not pass until the purchase money is paid, and yet such sales are considered as having been made from their established place of business. The sales here in question were, in a legal sense, for purposes of taxation, closed in Bluefield; the merchandise sold had its fixed location in and orders therefor were directed to Bluefield; the merchandise ordered from salesmen was segregated from the mass, and, after delivery, the purchase price was paid to the store in Bluefield, and all accountings in connection with the transactions there had. Then, it must be remembered that the establishment, maintenance and operation of stores in Bluefield necessarily preceded every single element of any sale made by any one of the plaintiffs, and without which not a single sales transaction could have been initiated or closed. The establishment and maintenance of these stores was the first and all important step, and this can neither be minimized nor ignored. In the face of this situation it is contended that the mere placing of an order for merchandise and the physical delivery thereof outside the city constitutes the sale. We cannot accept that contention. It ignores entirely the establishment and maintenance of the stores in Bluefield.

It is contended, however, that the ordinance itself cannot be construed to cover sales other than those made and accompanied by delivery in Bluefield, because the city must have known that it could not impose the tax on sales made outside the state, and from this it is argued that it must have been its intention to confine the tax strictly to sales consummated within its limits. We are unable to follow this line of argument. It is true that Sections 8 and 10, Article I of the federal constitution, pertaining to regulation of commerce between the states, inhibit the exercise of the taxing power of a state where the same amounts to a regulation or imposes a

burden upon interstate commerce, and this inhibition, of course, extends to creations of the state, such as a municipality; but in this case the city contends that the inhibition mentioned does not apply, and insists on its right to enforce the ordinance as written, which covers all sales. In this connection, it is interesting and important to note that the legislature, in imposing similar taxes, has not exempted therefrom sales made in interstate commerce, but has made the tax general and left the exemption of such sales to the officials charged with the administration of the law; and, by analogy, we may say that the failure of the ordinance to exempt interstate sales does not imply that all taxes not inhibited by the federal constitution were not intended to be imposed.

The plaintiffs rely strongly on *City of Sedalia* v. *Shell Petroleum Corporation,* 81 Fed. (2d) 193, 106 A. L. R. 1327, wherein a particular ordinance imposing a license tax of a certain rate per gallon on persons engaged in selling gasoline and transporting it in barrels, tank wagons and other containers having a capacity of more than five gallons, was held not to include sales made outside the city. In that case, however, the ordinance was considered ambiguous, and it will be noted covered only a single commodity. The validity of a municipal ordinance taxing the transportation of gasoline from storage tanks within the city for sale outside the city was doubted, but the point was not decided. We think that case is clearly distinguishable from the case at bar, because it is not here proposed to impose a tax upon the sale of a single commodity and, in fact, no particular sale is taxed. Here, it is the privilege of operating and maintaining a store which may cover all lines of commodities, and the business which grows out of the operation of such a store that is intended to be covered. We hold, therefore, that so far as the ordinance imposes a tax upon sales made from stores in Bluefield and delivered within this state, its validity will be upheld, and sales which may enter into the gross proceeds of sales, referred to in the ordinance, are those made from the stores of the

plaintiffs at Bluefield, regardless of points of delivery to customers within this state. Sales made by two of the plaintiffs from stores located at Mullens and Iaeger cannot, of course, be considered as sales made from Bluefield, and therefore cannot be included in the business of those stores.

The remaining question is the validity of the ordinance under consideration, with respect to sales made under the methods admittedly employed, which, as a part of the sales, involve actual delivery to customers residing outside this state. That a state may not, through its powers of taxation or otherwise, directly or through its agencies, regulate or impose a direct burden upon interstate commerce is so well settled that citation of authority would seem to be unnecessary. While, as stated above, the operation and maintenance of stores is the activity taxed, the amount of the tax is ascertained on the basis of all sales, without regard to state lines, and the effect thereof is to impose a tax on sales or transactions in interstate commerce. This state, in the administration of its privilege taxes, has recognized its lack of power to tax transactions in interstate commerce, and it can scarcely be said that its creature, the municipality of Bluefield, may impose a tax which the state, in its sovereign right, has not sought to impose. This view does not conflict with our holding that a tax may be imposed on sales made without the city and within the state, because as to state transactions, the limitation of power growing out of the federal constitution does not exist. The reason for the rule against the imposition of any character of burden upon interstate commerce is well known; its maintenance is vital to the free exchange of commence between the states, and should not be lightly ignored, even in a matter of relative unimportance. In *Crew Levick Company* v. *Pennsylvania,* 245 U. S. 292, 38 S. Ct. 126, 62 L. Ed. 295, it was held that:

> "A state tax imposed upon the business of selling goods in foreign commerce, the amount

of which is measured by the gross receipts, is unconstitutional as a regulation of foreign commerce and also as an impost upon exports, levied without the consent of Congress."

In that case the State of Pennsylvania imposed an annual mercantile license tax of "$3 upon each wholesale vender of or dealer in goods, wares, and merchandise, and 'one-half mill additional on each dollar of the whole volume, gross, of business transacted, annually'," and also imposed other similar taxes on other businesses at different rates. And in *Matson Navigation Company* v. *California*, 297 U. S. 441, 56 S. Ct. 553, 80 L. Ed. 791, a state tax on gross earnings derived from interstate commerce was held to be a burden upon that commerce and repugnant to the commerce clause of the federal constitution. In view of these authorities, which might be supplemented by many others, and the recognized rule which seeks to encourage commerce between the states, free from any state imposed burdens directly affecting the same, and the methods followed by this state in the administration of its legislation imposing taxes of a similar nature, we feel impelled to hold that the ordinance in question is invalid so far as it seeks to impose upon the plaintiffs the obligation to report, as a part of their gross proceeds of sales at their respective stores, sales made by actual delivery of commodities to persons residing outside this state.

The decree of the circuit court of Mercer County is affirmed in part, reversed in part and remanded for further proceedings not in conflict with this opinion.

*Affirmed in part; reversed in part; remanded.*