VERA H. HARPER, *Exrx., etc. v.* GEO. P. ALDERSON, *Tax Commissioner*

(No. 9552)

Submitted February 1, 1944.  Decided March 24, 1944.

Fox and LOVINS, JUDGES, dissenting.

*Nesbitt, Goodwin & Nesbitt,* for appellant.

*Ira J. Partlow,* Acting Attorney General, and *Kenneth E. Hines,* Assistant Attorney General, for appellee.

ROSE, PRESIDENT:

By a final decree entered by the Circuit Court of Ohio County in a chancery cause in which the plaintiff sought to enjoin the Tax Commissioner of this State from the collection of certain taxes, the injunction was denied and the bill of complaint dismissed. On application of the plaintiff we awarded this appeal.

Minnie E. Wilson in her lifetime did business under the style of "Uwanta Toilet & Towel Supply". The bill describes this business as follows:

> "The principal place of business of the plaintiff is located at 309 Kenney Street, in the City of Wheeling, Ohio County, West Virginia. Plaintiff's said business consists in providing a linen and towel supply service by delivering to various customers in the State of West Virginia and in the State of Ohio clean towels, linen aprons, coats, and similar articles of wearing apparel which, after use, are collected by the plaintiff's employees and returned to plaintiff's place of business for laundering and preparation for re-delivery to customers. The linen and towels are owned by the plaintiff and the laundering of them is performed at the plaintiff's said place of business in the City of Wheeling. The plaintiff charges her various customers a fee for the use of the clean linen and towels.
>
> "In order to facilitate collection of plaintiff's linen and toweling from and delivery to her customers in and near the City of Steubenville, in the State of Ohio, the plaintiff has established a branch depot in that city. The linen and toweling delivered from plaintiff's said Steubenville depot is laundered at her place of business in the City of Wheeling, forwarded to her depot at Steubenville and delivered from said depot to plaintiff's various customers in the State of Ohio.

The charge for the service is made to the Ohio customers the same as to the West Virginia customers, the billing being performed at the Wheeling office and payments being made to plaintiff's agents at the Steubenville depot and there deposited to her credit in a Steubenville Bank. After the towels and linen are used in the State of Ohio, they are collected by plaintiff's employees and returned to the Wheeling office for laundering and preparation for further service. The only marking placed on plaintiff's toweling and linen is the plaintiff's own trade name and the customers do not always receive for use the same items of toweling and linen.

"In addition to deliveries to plaintiff's customers in and near the City of Steubenville, performed in the manner aforesaid, the plaintiff also provides its service to certain customers in and near the Cities of Martins Ferry, Bridgeport and Bellaire, in the State of Ohio, deliveries being made to the latter customers directly from the plaintiff's place of business in the City of Wheeling."

The bill further shows that, by notice dated August 7, 1940, the Tax Commissioner made a supplemental assessment of taxes against the plaintiff for the privilege of continuing in, and carrying on, her business in the State of West Virginia during the years 1936 to 1938, both inclusive. This additional levy for these years was for the sums of $157.33, $168.94 and $155.65, respectively, and was based upon the proceeds of business done by the plaintiff with customers in the State of Ohio, which had been omitted from the returns made by her, on which her tax for the privilege of carrying on the business within this State was based. The bill prayed for an injunction against the collection of these additional taxes.

The Tax Commissioner demurred to the bill of complaint on the grounds that the tax was assessed for carrying on a "service business or calling" in this State; that the service rendered was exclusively in this State and is taxable as a local activity; and that the taxes levied are

for the privilege of conducting this business and not on the business itself, and therefore does not burden interstate commerce. A short, formal answer was also filed which does nothing but raise the same legal questions which are involved in the demurrer. The cause was submitted on bill, demurrer and answer, resulting in the final decree as above noted.

Pending the suit the original plaintiff died and the cause was revived in the name of her personal representative; and upon the expiration of the term of office of the then Tax Commissioner, the suit was revived in the name of his successor.

The statutory provisions involved are the following sections of Chapter 86 of the Acts of the Legislature of 1935:

"Sec. 2. There is hereby levied and shall be collected annual privilege taxes against the persons, on account of the business and other activities, and in the amounts to be determined by the application of rates against values or gross income as set forth in sections two- (a) to two- (i) inclusive, * * *

Sec. 2h. Upon every person engaging or continuing within this state in any service business or calling not otherwise specifically taxed under this act, there is likewise hereby levied and shall be collected a tax equal to one per cent of the gross income of any such business.

"Sec. 2i. Upon every person engaging or continuing within this state in the business of collecting incomes from the use of real or personal property or of any interest therein, whether by lease, conveyance or otherwise, and whether the return be in the form of rentals, royalties, fees, interest or otherwise, the tax shall be one per cent of the gross income of any such activity. * * *"

The Tax Commissioner asserts that the business for which these additional assessments were made was a "service business or calling" as defined in Section 2h,

and that this business must be considered as having been carried on exclusively in this State; while the plaintiff insisted that her business was that of "collecting incomes from the use" of personal property as specified in Section 2i, and, further that even if her business is to be considered a "service business", the part thereof which was done with customers in Ohio was interstate commerce and cannot be included in her gross income for the purpose of calculating her tax for the privilege of carrying on business within this State.

The question in issue, as we conceive it, thus becomes narrow and relatively simple. We cannot adopt the view that the business of the plaintiff was simply, or chiefly a "service" to her customers. Certainly the laundering of the linen and other articles was not the real object of the contract between the furnisher and the customers. It is difficult to perceive how the customers had any interest whatever in the renovating of these soiled articles. It mattered nothing to them whether the reclaimed linen and other articles were ever laundered, or ever put to any further use. The customers were not entitled to receive back the identical articles which they had used, and, in fact, would receive them again only as a coincidence. The customers' sole right was to have clean articles for use. They had no interest whatever in the articles before they were delivered or after they were reclaimed. The laundering of these articles was no more a service to the customers than a like cleaning and preparing of ordinary commercial commodities for sale such as vegetables or fruits, or in the conditioning of automobiles, carriages, teams or pianos, and other like chattels kept for hire, which require a substantial amount of repeated labor to restore them to a condition suitable for use.

There was, of course, a certain amount of service in the delivery of the plaintiff's linen and towels to her customers and possibly some vestige of service in removing them from the user's premises, but this service does

not in the least differ from that which ordinarily attends the everyday retail sale.

The word "service" as used with reference to the plaintiff's business in her bill of complaint, signifies nothing. All public utility concerns are spoken of as public service companies. The public carrying of goods, passengers, messages, and power, and the public furnishing of commodities such as gas, water and electric current are spoken of as rendering a "public service" not only in common parlance but also in law books and in statutes. A vast amount of modern business consists of "service" of this character and includes transactions which are in fact sales, or leases as well as such as are service in the strict and accurate sense of the term. Hence we have concerned ourselves only with the actual character of the plaintiff's business.

On the other hand it is perfectly clear that the dominant feature of the plaintiff's business was a hiring or leasing of the articles furnished and a collecting of income for their use. The bill specifically alleges, and the answer directly admits, that the fee paid to her by her customers was "for the use of the clean linen and towels". But without this formal admission in the record, there could be no question but that the sole interest of customers was in the use of the articles furnished by the plaintiff. It was for this use that they contracted and for this use that they paid. The plaintiff's contract, or obligation, to her customers was completely performed when they were kept supplied with clean articles. Nothing that she did preliminary to delivering such linen and other articles to the customers or after reclaiming them would have constituted a performance, or any part of a performance of her contract, with these users. The use of the articles is all that the customer received, all that he was entitled to claim and all for which he paid. Therefore, the business between the plaintiff and her customers must be treated as a hiring or leasing of chattels, or, in the language of the statute, a "collecting incomes from" the use of personal property.

Gross income from which a tax for the privilege of carrying on a business in this State is computed, cannot include income from interstate business. We consider this proposition settled definitely by the case of *Bluefield Produce and Provision Company* v. *City of Bluefield,* 120 W. Va. 111, 196 S. E. 568, 569. That case involved an ordinance of the City of Bluefield creating a license tax on all stores operating within the corporate limits of the City, the amount of which was fixed at "one-sixth of 1% of the gross proceeds of sales of such store". We held that:

> "In the administration of an ordinance of a municipality imposing a license tax on the 'opening, establishing, operating or maintaining' of stores therein, based on the 'gross proceeds of sales of such store', sales made from a store licensed thereunder effected by actual delivery to purchasers outside the municipality, and outside this state, may not be included in fixing the gross proceeds of sales from which the tax is computed, the same being in violation of Sections 8 and 10 of Article I of the Constitution of the United States."

This decision is in exact accord with many express decisions of the Supreme Court of the United States. *Gwin, White & Prince* v. *Henneford,* 305 U. S. 435, 59 S. Ct. 325, 83 L. Ed. 272; *Matson Navigation Co.* v. *State Board of Equalization of California,* 297 U. S. 441, 56 S. Ct. 553, 80 L. Ed. 791; *Cooney* v. *Mountain States Telephone & Telegraph Company,* 294 U. S. 384, 55 S. Ct. 477, 79 L. Ed. 934; *East Ohio Gas Company* v. *Tax Commissioner,* 283 U. S. 465, 51 S. Ct. 499; 75 L. Ed. 1171; *American Manufacturing Company* v. *City of St. Louis,* 250 U. S. 459, 39 S. Ct. 522, 63 L. Ed. 1084; *Crew-Levick Company* v. *Commonwealth of Pennsylvania,* 245 U. S. 292, 38 S. Ct. 126, 62 L. Ed. 295.

It is true that in the *Bluefield* case only sales in interstate commerce were involved; but the case was decided, not upon the fact that the transactions were sales, but by reason of their being interstate commerce. The word

"commerce" as used in the Constitution of the United States has not a technical, but a practical, meaning. It is in no wise limited to sales, but includes many other dealings between points in different states which produce a movement of goods across state lines. Specifically, it has often been held that the leasing or hiring of chattels which requires their transfer from the owner in one state to the user in another constitutes interstate commerce. *James v. United Artists Corporation*, 305 U. S. 410, 59 S. Ct. 272, 83 L. Ed. 256; *Binderup v. Pathe Exchange, Inc.*, 263 U. S. 291, 44 S. Ct. 96, 68 L. Ed. 308; *United Shoe Machinery Corp. v. United States*, 258 U. S. 451, 42 S. Ct. 363, 66 L. Ed. 708; *Johnston v. Lamson Company*, 159 Va. 666, 167 S. E. 417; *State v. Paramount Publix Corp.*, 178 La. 818, 152 So. 534; *Houston Canning Company v. Virginia Can Co.*, 211 Ala. 232, 100 So. 104; *General Talking Pictures Corp. v. Shea*, 185 Ark. 777, 49 S. W. 2d 359; *Pauline Oil and Gas Company v. Mutual Tank Line Company*, 118 Okla. 111, 246 P. 851; *General Talking Pictures Corp. v. DeMarce*, 203 Minn. 28, 279 N. W. 750; *Hayden v. Dallas County*, (Tex. Civ. App.) 143 S. W. 2d 990. Our own case of *Charleston Transit Co. v. James*, 121 W. Va. 412, 4 S. E. 2d 297, seems by implication to consider the principle of the *Bluefield* case applicable to a hiring of chattels, as well as to a sale, since the Court found it necessary to determine that the business there considered was neither a sale nor a hiring of chattels in interstate commerce in order to sustain the tax involved. In *James v. United Artists Corporation, supra,* which involved the statute here under consideration, it was held that the furnishing of moving picture films from without this State to users within this State was interstate commerce and that the income therefrom could not be burdened with the privilege tax sought to be enjoined in the case at bar. We perceive no legal difference between the furnishing of such films across state lines and the like furnishing of linen, towels, and similar articles as in the present case.

The decree of the Circuit Court of Ohio County will be reversed and the cause remanded with directions to enter

a decree in accordance with the views herein announced.

*Reversed and remanded.*

Fox, Judge, dissenting:

Judge Lovins and I find ourselves unable to concur in the opinion of the majority filed in this case.

The facts in this case are not in dispute. Plaintiff is engaged in a special type of business in the City of Wheeling. She owns towels, aprons, coats, etc., which are laundered and prepared for use at Wheeling, in this State, and they are then delivered to customers in this State and in the adjoining State of Ohio. Compensation for the use thereof is charged, and is uniform whether the customer is located in Ohio or in this State. When used, they are collected and returned to the plaintiff's principal place of business in Wheeling, and are there re-cleaned, repaired and laundered, and then re-delivered to customers for use. The same article may be, and usually is, delivered to different customers. On this state of facts the question arises as to whether the defendant is entitled to impose a tax based upon the gross income derived from furnishing such supplies to customers in the State of Ohio.

Whether plaintiff is engaged in a service business, or in the business of collecting income for the use of real or personal property is in dispute. The measure of the tax and the rate of levy being the same, in either event, this dispute is, in my view of the entire case, of little practical importance. Service business or calling is defined in Section 1, Chapter 33, Acts of the Legislature, First Extraordinary Session, 1933, as follows: " 'Service business or calling' shall include all nonprofessional activities engaged in for other persons for a consideration, which involve the rendering of a service as distinguished from the production or sale of tangible property, but shall not include the services rendered by an employee to his employer." There is no definition of the business of collecting incomes from the use of real or personal property. The

tax on these two types of business is imposed by subsections 2(h) and 2(i), Chapter 86, Acts of the Legislature, Regular Session, 1935. Section 2(h), covering service business reads as follows: "Upon every person engaged or continuing within this state in any service business or calling not otherwise specifically taxed under this act, there is likewise hereby levied and shall be collected a tax equal to one per cent of the gross income of any such business." Section 2(i), covering the business of collecting incomes for the use of real or personal property reads: "Upon every person engaging or continuing within this state in the business of collecting incomes from the use of real or personal property or of any interest therein, whether by lease, conveyance or otherwise, and whether the return be in the form of rentals, royalties, fees, interest or otherwise, the tax shall be one per cent of the gross income of any such activity * * *". It will be noted that the tax is only laid upon business carried on within this State. I am of the opinion that the business in which the plaintiff is engaged more clearly comes within the definition of service business or calling, than the business of collecting incomes from real or personal property, and I think this construction of the statute is supported by the case of *Charleston Transit Co.* v. *James,* 121 W. Va. 412, 4 S. E. 2d 297. While the word "otherwise" is used in Section 2(i), the apparent purpose of that section was to impose a tax arising from rentals, royalties, fees and interest. Quite frequently the use of real and personal property is involved in the rendering of services, and less confusion will arise if, in such case, the tax is laid on the activity as a service.

It should always be remembered that the tax in question was imposed for the privilege of doing business in this State. Section 2 of Chapter 33, Acts of the Legislature, First Extraordinary Session, 1933, provides: "There is hereby levied and shall be collected annual privilege taxes against the persons, on account of the business and other activities, and in the amounts to be determined by the application of rates against values or gross income as

follows". Then follow subdivisions (a) to (i), both in-
clusive, which separate the different classes and types of
business upon which the privilege tax is to be levied, and
in each case the gross receipts of the business taxed are
made the measure of the taxes. As to every business
covered by the tax, the requirement is that the business
taxed shall be carried on "within this state". This was
obviously a necessary provision, because the Legislature
of this State never had, and has never assumed, the right
to levy a tax on business carried on beyond the boun-
daries of this State. Generally speaking, no reference or
exception is made to a business established and carried
on in this State which may extend beyond its borders;
but as to the tax upon the business of producing for sale,
profit or commercial use any natural resource, Section
2 (a) of the Act provides that the measure of the tax is
the value of the production in this State, regardless of the
place of its sale or the fact that delivery may be made to
points outside the State; and this same provision is made
with respect to the business of manufacturing. No doubt
these provisions were placed in the Act because of the
fact that it was well known that a very large percentage
of the production of natural resources and manufacturing
were sold outside this State, and it was thought important
to make certain that the tax imposed was laid upon the
activity before the product thereof entered interstate
commerce. Another special provision is that relating to
public service business, wherein it is provided that the
tax shall not include gross income· derived from com-
merce between the states. The other subdivisions, being
Sections c, d, e, f, g, h, and i, of Section 2, Chapter 33,
contain no saving clause with respect to any business cov-
ered thereby, which may extend beyond the borders of
this State, and counsel for plaintiff calls attention to this
omission, and argues that the saving clause not being men-
tioned, it was necessarily intended that no business per-
formed outside the State could be made the basis of
taxation within this State. I attach little importance to
this omission. The advisability of the provisions relating

to the production of natural resources, manufacturing, and public service business is apparent, but the advisability or necessity therefor as to the other businesses does not, in my opinion, follow. Whether these businesses once established in this State, and whose ramifications may possibly extend beyond the State, are subject to be taxed upon the gross incomes of the entire businesses, is a question which, in my opinion, should be decided on grounds other than the technical form of the statute as written.

The tax imposed upon plaintiff's business is in effect based on, and measured by, the gross income therefrom; but its underlying basis is that of the privilege of doing business in this State. Therefore, the question of where the business is established and carried on is paramount. Few businesses of any magnitude are confined to a single state. We may take judicial notice of the fact that in this State a number of the most important cities are located at or very near the boundaries of adjoining and adjacent states, and necessarily businesses established and carried on in any of these cities, and in smaller communities so situated, extend beyond the borders of this State. Of course, if business carried on in these border cities and communities is that of the sale of tangible property, and there is a delivery beyond the State, no tax can be imposed, because of the direct burden imposed thereby on interstate commerce. *Bluefield Produce & Provision Co. v. City of Bluefield,* 120 W. Va. 111, 196 S. E. 568. But does it necessarily follow that this principle should be applied to businesses of other classes, particularly service businesses, which are directed and controlled from an established place of business in this State, even though the services are actually performed and furnished at points outside the State?

The answer to this question involves a consideration of what was intended by the framers of the Federal Constitution. The inhibition upon the taxing power of a state, so far as it affects commerce between states, will be found in Section 8 and 10 of Article I of the Constitution of the United States. By Section 8, Congress is given

power "to regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes", and by Section 10 it is provided that, "No State, shall without the consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing its inspection laws, * * *." The purpose is manifest. It was to prevent any restrictions upon the free flow of commerce between the states. It was not intended to curtail the power of the states to impose taxes upon businesses established and carried on within their borders, which did not directly or substantially impose a burden upon interstate commerce. The imposition of any tax, even property taxes, on businesses which engage in interstate commerce creates an incidental burden on such commerce. Imposition of such tax has never been understood to come within the inhibition of the Federal Constitution.

I am of the opinion that the tax in question in this case is not a direct or substantial burden on interstate commerce, but only an incidental one; and not a tax, burden or regulation of interstate commerce which the Federal Constitution intended to prevent. The business of the plaintiff is of a particular and unusual nature. To begin with, the instrumentalities of the business—towels, aprons, coats, etc.—are assembled at her place of business in this State; they are received and prepared for use in this State; entire control and direction of every step of the business is exercised and given in this State; the charges for the service are determined here, and such charges assembled in this State; there is no discrimination as between customers, whether within or without the State; when used, the instrumentalities are collected and returned to her place of business in this State, and are there processed and redistributed from that point. It is the same type and class of service wherever performed, and the only distinction is that the towels and garments are in one case delivered to customers within this State, and in the other outside. Should it be held that by reason of the fact that, in the course of a business established and

carried on in this State, a single element—delivery outside the State—such outside deliveries are to be treated as a business not carried on within this State? I do not think it should be so held, and I assert that there is ample authority to sustain that position.

The plaintiff relies in particular upon two cases to sustain her contention. First, the case of *Gwin, White & Prince, Inc.* v. *Henneford,* 305 U. S. 434, 59 S. Ct. 325, 83 L. Ed. 272. That was a case where a corporation of the State of Washington carried on the business of marketing agent for a fruit growers cooperative association, the business of which was to transport and sell fruit and fruit products in interstate commerce, and the business of the marketing agent was to promote such sales. It was held that the activities of the marketing agent were primarily a part and parcel of an interstate business, the income from which could not be taxed, although it was held in that case "that not every local tax laid upon gross receipts derived from participation in interstate commerce is forbidden, since even interstate business must pay its way by bearing its share of local tax burdens." As we understand that case, it is based upon the idea that the primary business of the cooperative was selling fruit in interstate commerce, and that the activities of its agent were merely promotion of such sales and therefore part of that commerce. Another case relied upon is that of *James* v. *United Artists Corp.,* 305 U. S. 410. That was a case where the State of West Virginia attempted to impose a tax upon the distributors of motion picture films. The distributors had no place of business in the taxing state, and did nothing more than forward films to exhibitors within that state, who exhibited them, and paid to the State a tax upon the gross receipts of their business. It was held that the distributors of the films were not subject to the payment of the tax under the provisions of a statute (the same now being considered) imposing a tax upon the business of collecting incomes for the use of real and personal property. I do not think either of these cases reaches the situation presented in the case at bar.

On the other side of the proposition, we have the case of *Western Livestock* v. *Bureau of Revenue*, 303 U. S. 250, 58 S. Ct. 546, 82 L. Ed. 823. In that case a statute of the State of New Mexico levied a tax on the privilege of publishing newspapers and magazines, and based the same upon the gross receipts from the sale of advertising. This business involved the transmission from advertisers to publishers of cuts, mats, information, copy, etc., and payment for advertising through interstate facilities. The publication in question was published in the State of New Mexico, and it was held that the tax imposed upon the sale of advertising did not infringe the commerce clause of the Federal Constitution. The following comment was made in the body of the opinion in that case: "* * * We think the burden on the interstate business is too remote and too attenuated to call for a rigidly logical application of the doctrine that gross receipts from interstate commerce may not be made the measure of a tax. Experience has taught that the opposing demands that the commerce shall bear its share of local taxation, and that it shall not, on the other hand, be subjected to multiple tax burdens merely because it is interstate commerce, are not capable of reconciliation by resort to the syllogism. Practical rather than logical distinctions must be sought", and further: "That the mere formation of a contract between persons in different states is not within the protection of the commerce clause, at least in the absence of Congressional action, unless the performance is within its protection, is a proposition no longer open to question. * * * Nor is taxation of a local business or occupation which is separate and distinct from the transportation and intercourse which is interstate commerce forbidden merely because in the ordinary course such transportation or intercourse is induced or occasioned by the business. * * * It was not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of state tax burden even though it increases the cost of doing the business. 'Even interstate business must pay its way.' * * * and the bare fact that

one is carrying on interstate commerce does not relieve him from many forms of state taxation which add to the cost of his business. * * *". I think these observations are directly in point, on the theory that in the case at bar the plaintiff carries on a business within this State, and that it is required to assume its just share of state tax burdens, and cannot escape that burden as to its entire business merely because, in the course thereof and through a single element, incidental deliveries outside the State, may constitute a part of its business.

In *Coverdale* v. *Arkansas-Louisiana Pipe Line Co.,* 303 U. S. 604, 58 S. Ct. 736, 739, 82 L. Ed. 1043, it was held that, "Taxation by the states of the business of interstate commerce is forbidden only because it is deemed an interference with that commerce, the uniform regulation of which is necessarily reserved to the Congress."; and, "Exemption of those engaged in interstate commerce from the taxation others bear should not be extended beyond the necessity of keeping that commerce free from interference." I do not believe the imposition of the tax complained of, based upon the entire business of the plaintiff, constitutes such interference with and burden on interstate commerce, as justifies our holding it invalid on that ground.

Another case, strongly relied upon by the court below, is that of *Department of Treasury of Indiana* v. *Ingram-Richardson Manufacturing Co.,* 313 U. S. 252, 61 S. Ct. 866, 85 L. Ed. 1313. An Indiana corporation operated a factory in that state, which manufactured enamel and applied it by heat to metal articles, obtained through its travelling salesmen, from manufacturers in other states and on orders for enameled parts, used in the making of stoves and refrigerators. The contention of the taxpayer was that, as to business obtained outside of Indiana, the gross income tax of that state could not be applied. It was held that income derived from services, not from sales of the enamel in interstate commerce, were taxable in Indiana, and that the transportation involved was merely an incident of the enameling service. The distinction between

that case and the case at bar is this: The Indiana concern performed a service on property which it did not own, and that service, aside from the transportation and delivery, was wholly performed within the State of Indiana, and may be said to be strictly a service business. In the case at bar the property involved is owned by the plaintiff. Such processing as she does in West Virginia is upon her own property, and not the property of others. This is, in my opinion, a distinction without a difference, as the court below held. The basis for my view is this: The business of the plaintiff is carried on in West Virginia, and any element of that business involving interstate transactions is merely incidental, and in this theory of the case it matters not whether the service performed is upon the property of another or from the use of the property of the taxpayer.

In the case of *Holland Furnace Co.* v. *Department of Treasury*, 133 Fed. 2d 212 (writ of certiorari denied by United States Supreme Court, October 11, 1943, 88 L. ed. 30,) the contention of the appellants being that they were not subject to the Indiana gross income tax and that their only activities in the state of Indiana were "the solicitation of orders and installment of equipment in aid of interstate commerce." The state tax was upheld, the following language being used in the opinion: "The Holland and Interstate contracts were contracts to perform work and furnish labor and materials at specified places in Indiana; such contracts are local in character; * * * and we have no hesitancy in saying that the State of Indiana has the right to apply its gross income tax to business actually transacted within its borders, notwithstanding that interstate commerce, as an incident, may have intervened at some point in the transaction. It is the effect of the tax upon commerce which interests the courts. To be sure, when the possible effect of a state tax is to place interstate commerce at a disadvantage and cumulative burdens are imposed, competitively, with purely local trade, the fact that the tax is conditioned on a local event will not save it, but where interstate commerce is not

subjected to a double tax burden to which intrastate commerce is not exposed, the tax is not invalid."

The questions presented in this case are technical in their nature, and involve many difficulties in their solution. The border line between a tax which burdens interstate commerce, and one which does not, is often difficult of definition, and it is so in this case. There is plausible argument for the proposition that the plaintiff is engaged in the sale of a service, and when that service is sold and performed outside the State, is subject to the same rule as if a transfer of title to tangible personal property were involved, and as to such sale it is admitted that no tax could be imposed, and reasonable arguments may be found in support of the proposition that the business of plaintiff is that of collecting incomes for the use of personal property; but, for reasons given above, I would discard both theories because I think the plaintiff's business is that of furnishing a service from an established place of business in this State, rather than a sale in interstate commerce, or collecting incomes. Furthermore, taxation is a practical matter, and courts should not attempt to construe a particular tax as a burden on interstate commerce when, in fact, it is not such burden.

The plaintiff's business is local in its nature. It serves a limited community. By reason of the fact that it is located on the line between states makes it feasible, and even necessary, for it to do business in both states. The plaintiff selected this State as the location of her business, and has had thrown around that business the protection of this State, and it should bear its equal share of the burden of local and state taxation. If the tax imposed by the State in fact created a burden on interstate commerce, it could not be collected, but until that burden is shown, or from the circumstances it can be clearly seen that such burden exists, there would seem to be no occasion for holding it to be a tax beyond the power of the State to impose. Then, the majority opinion will add to the complexities and difficulties in administering the privilege tax law, and open avenues for tax evasions, compared to which, the

benefits secured to the plaintiff and others engaged in like business, are small indeed. I concede, of course, that if the statute requires such a result, it must be so; but I do not think a fair and practical consideration thereof calls for an interpretation which will bring about such a result, and I do not think we should take pains to find reasons to sustain an interpretation out of which so many difficulties are likely to arise. In saying this, I am not unmindful of the rule that, in tax matters, doubts are resolved in favor of the taxpayer. These considerations lead us to believe. that the judgment of the Circuit Court of Ohio County should be affirmed. We would hold that a person who owns towels, aprons, coats and other textile products, which he cleans and prepares for use at a place of business, established for that purpose, in this State, and who, for a consideration, delivers from such place of business such products to customers of his business in this and adjoining states, and when such products become soiled, collects the same and returns them to his place of business in this State, where they are cleaned and prepared for further use, and from there re-delivered to his customers, is engaged in a service business or calling, the privilege of engaging in which in this State is taxable under subsections 2 (h) of Chapter 86, Acts of the Legislature, Regular Session, 1935, and the measure of the tax is the gross income of such business, including that portion thereof received for services rendered outside this State.