146 S.E.2d 686 (1965)
STATE ex rel. G. Thomas BATTLE, State Tax Commissioner,
v.
B. D. BAILEY & SONS, INC.
No. 12447.
Supreme Court of Appeals of West Virginia.
Submitted September 28, 1965.
Decided December 14, 1965.
Dissenting Opinion February 16, 1966.
Concurring Opinion February 23, 1966.
*687 C. Donald Robertson, Atty. Gen., Jack M. McCarty, Asst. Atty. Gen., Charleston, for appellant.
Campbell, McNeer, Woods, Bagley & Emerson, Selden S. McNeer, Jr., R. G. McNeer, Huntington, for appellee.
CALHOUN, Judge.
On May 10, 1962, in accordance with the provisions of Chapter 11, Article 1, Section *688 2a of Code, 1931, as amended, B. D. Bailey & Sons, Inc., filed with the state tax commissioner a petition for refund of certain taxes theretofore collected and paid under the provisions of Chapter 11, Article 13, Sections 2 and 2h of Code, 1931, as amended. On March 15, 1963, the state tax commissioner made a ruling by which the request of a refund was denied. Thereafter, B. D. Bailey & Sons, Inc., pursuant to the provisions of Chapter 11, Article 1, Section 2a of Code, 1931, as amended, requested that the state tax commissioner institute a declaratory judgment action in order that it might be determined judicially whether the taxes, or any part thereof, had been collected unlawfully.
On November 7, 1963, Honorable G. Thomas Battle, State Tax Commissioner, instituted a declaratory judgment action in the Circuit Court of Kanawha County in order to have a determination whether the taxes in question, or any part thereof, had been unlawfully collected. The case was submitted for decision upon the complaint, an answer by B. D. Bailey & Sons, Inc., and a written stipulation of facts. The circuit court held that the imposition and collection of the taxes in question contravened the commerce clause of Section 8 of Article I of the Constitution of the United States; and the circuit court, therefore, directed the state tax commissioner to refund to the taxpayer the sum of $1,125.09, the amount of taxes which were held to have been unlawfully collected.
From the final judgment of the circuit court, embodied in an order entered on June 8, 1964, the state tax commissioner has prosecuted this appeal. The case has been submitted in this Court for decision on the record made in the circuit court and upon briefs and oral argument of counsel.
B. D. Bailey & Sons, Inc., is a West Virginia corporation which, for the sake of brevity and convenience, may be referred to in this opinion merely as Bailey or as the defendant. Its business activities are conducted at and from its place of business in the City of Clarksburg, West Virginia.
In the circuit court, the state tax commissioner as the plaintiff and Bailey as the defendant in the declaratory judgment action entered into a written stipulation of facts, a portion of which is as follows:
"That the Defendant was and is, and specifically during the years 1959, 1960, and 1961, engaged in the business of acting as manufacturer's representative and merchandise broker, under a franchise or contract arrangement, whereby the said manufacturer's representative and merchandise broker was granted the right by certain manufacturers and food processors to represent exclusively such manufacturers and food processors within a certain geographical area in the State of West Virginia, which area is specifically set forth in the said franchise or contract; that such franchise or contract provides for the commissions to be paid the said manufacturer's representative and merchandise broker by the manufacturer or food processor; that certain of the said manufacturers and food processors are located in the State of West Virginia and certain of them are located outside the State of West Virginia; that the defendant's business activities consist of soliciting orders of merchandise for the said manufacturers and food processors from wholesalers and chain-store operators located in West Virginia; that the Defendant, after securing such orders, sends them on to the manufacturer and food processor, who reserves the right to accept or reject such orders, and upon acceptance fills the orders and arranges for delivery of the merchandise by common carrier, F. O. B. point of shipment, to the purchaser in West Virginia; that any loss of merchandise in shipment is borne by the purchaser, with the manufacturer and food processor, as a courtesy, processing the claims for such loss against the common carrier and *689 the original merchandise or its replacement being ultimately delivered to the purchaser in West Virginia; such purchaser being the said wholesaler or chain-store operator located in West Virginia; that all of the Defendant's business activities of soliciting, securing, and preparing merchandise orders takes place entirely within the State of West Virginia; that the billing for such merchandise is sent directly to the said West Virginia purchaser by the manufacturer and food processor and payment is made by the said purchaser directly to the manufacturer and food processor; that none of the said merchandise involved in the above-described activity has ever been purchased in the name of or by the Defendant; that the Defendant's business activity and the gross receipts upon which taxes have been paid and which the Defendant alleges have been unlawfully exacted has been exclusively between citizens and business firms, that is, manufacturers and food processors located outside the State of West Virginia on the one hand, and citizens and business firms, that is, wholesalers and chain-store operators, located within the State of West Virginia on the other hand; and that all of the Defendant's income and gross receipts are in the form of commissions received from the said manufacturers and food processors for the performance by the Defendant of the said business activities.
"That approximately 90 per cent of the Defendant's gross business is transacted with those manufacturers or food processors located outside the State of West Virginia."
The taxes in question were levied and collected pursuant to the following statutory provisions:
"(2) Imposition of Privilege Tax. There is hereby levied and shall be collected annual privilege taxes against the persons, on account of the business and other activities, and in the amounts to be determined by the application of rates against values or gross income as set forth in sections two-a to two-j, inclusive, of this article."
"(2h) Service Business or Calling not Otherwise Specifically Taxed. Upon every person engaging or continuing within this state in any service business or calling not otherwise specifically taxed under this law, there is likewise hereby levied and shall be collected a tax equal to one and five one-hundredths per cent of the gross income of any such business."
The taxes involved in this case have been levied and paid exclusively on the gross amount earned by Bailey, during the period of time in question, in the form of commissions paid to it by nonresident manufacturers and food processors. That is, all the taxes in question relate to shipments from nonresident sellers to resident purchasers. Bailey contends that its business in this respect is "an instrumentality of interstate commerce"; and that the tax in question constitutes an unconstitutional burden on interstate commerce. On the other hand, the state tax commissioner contends that Bailey's business activity upon which the taxes in question have been levied is performed wholly within the State of West Virginia and that, therefore, it is not an activity in interstate commerce; and that, even if the business activity of Bailey is one in interstate commerce, the tax imposed is not precluded or rendered unlawful by the commerce clause of the Constitution.
At the outset, the Court is mindful of the well settled legal principle that, in considering the constitutionality of any legislative enactment, courts are required to exercise due restraint, in recognition of constitutional principles pertaining to the separation of powers in government among the judicial, legislative and executive branches. Constitution of West Virginia, *690 Article V, Section 1. Every reasonable construction must be resorted to by the courts in order to sustain constitutionality. Any reasonable doubt must be resolved in favor of the constitutionality of the legislative enactment in question. State ex rel. Appalachian Power Co. v. Gainer, etc., et al., W.Va., 143 S.E.2d 351, and cases therein cited. Substantially identical legal principles are applied when the question of constitutionality involves the commerce clause of the Constitution of the United States. Eureka Pipe Line Co. v. Hallanan et al., 87 W.Va. 396, 105 S.E. 506, pt. 1 syl.
Another principle we are required to bear in mind in this case is that, in considering whether a state law violates the commerce clause of the Constitution, this Court must yield to decisions of the Supreme Court of the United States. Brown v. City of Richmond et al., 204 Va. 471, 132 S.E.2d 495; Western Union Telegraph Co. v. Bowles, 124 Va. 730, 98 S.E. 645. See also Blossom Dairy Co. v. International Brotherhood of Teamsters et al., 125 W.Va. 165, 171-72, 23 S.E.2d 645, 649; Staton v. Virginian Railway Co., 119 W.Va. 658, 661, 195 S.E. 601, 603; Harness, Admr. v. Baltimore & Ohio Railroad Company et al., 86 W.Va. 284, 103 S.E. 866, pt. 2 syl. "Where a question is federal in its nature, the decisions of the supreme court of the United States are absolutely binding on the various state courts and must be followed regardless of the views of the latter courts, and even though such decisions are inconsistent with prior decisions of the state courts. So the decisions of the federal court are binding as to the construction of the federal constitution and are also binding as to the validity vel non of state statutes assailed as being in conflict with the federal constitution, * * *." 21 C.J.S. Courts § 206, pages 365-366. "A rule stated in a decision of the United States Supreme Court and based upon the Federal Constitution is, under the supremacy clause of the Federal Constitution, binding upon the state courts as well as upon federal courts. It follows that a decision of the United States Supreme Court on a question of construction or applicability of the Federal Constitution is a precedent binding on state courts, including the highest court of a state, faced with the same problems of federal constitutional law. If the United States Supreme Court overrules its prior decision concerning the construction of a provision of the Federal Constitution, the overruling decision is binding on the highest court of a state." 20 Am.Jur.2d, Courts, Section 226, pages 557-58. The Supreme Court of the United States, therefore, is the final arbiter in relation to the constitutionality of state statutes in the light of the commerce clause of the Constitution. Prior decisions of this Court and decisions of appellate courts of other states are helpful, in a determination of the constitutional question presented in this case, only to the extent that they aid in an interpretation and application of pertinent decisions of the Supreme Court of the United States.
It appears from decisions of the Supreme Court of the United States that legal principles relating to constitutionality of state statutes, in the light of the commerce clause, are not static, but rather that they are evolving in character; and that, for this reason, our attention in the present case should be directed to current trends of such decisions in this area.
In three recent cases, this Court has been called upon to deal with the commerce clause of the Constitution. Nuckols v. Athey, W.Va., 138 S.E.2d 344, involved a statutory provision which, in its operation, clearly discriminated against interstate commerce. The present case involves a contention of an undue burden upon, rather than a discrimination against, interstate commerce. State ex rel. Battle v. Baltimore and Ohio Railroad Company, W.Va., 143 S.E. 331, involved a taxpayer which was clearly engaged in interstate commerce. Gambino et al. v. Jackson et al., W.Va., 145 S.E.2d 124, involved a resident of this state who was engaged in two distinct business enterprises, one clearly interstate and the *691 other clearly intrastate in character. None of these three recent decisions is a direct precedent for a decision of the present case, except that each of them tends to sustain the obvious proposition that the shipments of merchandise in the present case from nonresident sellers to resident buyers constituted shipments in interstate commerce. The fact remains, however, that Bailey was not directly involved in such interstate transactions between the nonresident sellers and the resident buyers. He was merely an intermediary whose services facilitated or brought into operation the interstate operations involving the nonresident sellers and the resident buyers. In each instance, his services, rendered wholly within this state, were performed before the interstate shipment of merchandise was made, and payment of his commissions was received by him in this state after the merchandise shipped in interstate commerce had come to rest within this state.
Harper, Executrix v. Alderson, 126 W. Va. 707, 30 S.E.2d 521, 153 A.L.R. 819, involved a taxpayer whose principal place of business was in the City of Wheeling, West Virginia. The taxpayer was engaged in a business of providing a linen and towel supply service to customers both within this state and in the State of Ohio. A fee was charged by the taxpayer to the customers for rental or use of the linen and towels. In the operation of such business, the taxpayer delivered clean linen and towels to customers in Ohio and later the linen and towels were picked up in Ohio and returned to the taxpayer's place of business in this state where they were laundered. The Court divided three to two on the question whether the taxpayer's business with customers in Ohio constituted a letting or hiring of chattels and consequently interstate commerce, or whether such business constituted merely a rendering of service and consequently intrastate commerce. The first and second points of the syllabus of the case are as follows:
"1. The furnishing of towels, linen and other like articles to users for pay, followed by a reclaiming of the articles furnished and a laundering of them in preparation for further use by customers in general, is essentially a letting or hiring of chattels rather than a rendering of service.
"2. Chattels furnished for hire by an owner from a point in one state to a user at a point in another state, which requires and results in the movement of the chattels across a state line, is interstate commerce."
In less than a month after the decision of Harper, Executrix v. Alderson, supra, the Court unanimously decided Arslain v. Alderson, 126 W.Va. 880, 30 S.E.2d 533, which involved taxpayers (plaintiffs in the trial court) who were engaged in the business of cleaning, dyeing and repairing wearing apparel and household furnishings at their plants and establishments in the City of Wheeling, West Virginia. As a part of the services rendered, the taxpayers furnished to their customers hangers, garment bags, mothproof bags and materials necessary for alteration and repair of wearing apparel and household articles. In the operation of their businesses, the taxpayers transported wearing apparel and household furnishings from the homes or establishments of their customers in the State of Ohio to the taxpayers' plants in this state where services were performed and thereafter the wearing apparel and household furnishings were returned to the owners in the State of Ohio. The case involved the question whether the imposition of a privilege tax on the taxpayers' earnings from business done with customers in the State of Ohio was prohibited by the commerce clause of the Constitution. In its opinion, the Court reviewed its prior decisions, including Harper, Executrix v. Alderson, supra, and pertinent decisions of the Supreme Court of the United States, and summarized its unanimous decision in the first point of the syllabus as follows: "A person engaged in the business of rendering services for hire at a plant or establishment within this State, is not engaged in interstate commerce, and he may be *692 assessed a privilege tax measured by the gross income received, including that derived from persons and sources beyond state boundaries, notwithstanding the incidental interstate transportation of articles of personal property on which the work is done." In the body of the opinion, the Court stated (126 W.Va. at page 886, 30 S.E.2d at 536): "Bearing in mind that the services performed by plaintiffs are activities carried on in the State of West Virginia and that the transportation of the articles on which work is done is only in aid of the primary purpose, we conclude that the assessment and collection of the privilege tax on the businesses of plaintiffs do not contravene Article I, Section 8 of the Constitution of the United States."
The Harper case and the Arslain case, decided almost simultaneously, appear to be clear and distinct authority for a decision in the present case that Bailey is merely engaged in the performance of services within the State of West Virginia, as distinguished from interstate transportation or shipment of property; and that it is not engaged in interstate commerce and, therefore, is not exempt from payment of the taxes in question, notwithstanding the fact that, as an incident of the proper performance of its services within this state, it transmits messages to and receives messages from the nonresident manufacturers and food processors and notwithstanding the fact that, after the goods are shipped by the nonresident sellers and received by resident buyers from time to time, Bailey receives, by United States mail, payment in this state of its commissions from the nonresident sellers. In final analysis, the interstate shipment of goods directly involves only the nonresident sellers and the resident buyers. The interstate transportation of goods is set in motion in each instance only after there has been a "meeting of minds" between the two contracting parties; that is, after the offer of the resident to purchase is accepted by the nonresident seller. We are unable to perceive how the imposition of the tax by this state upon Bailey's gross earnings in the form of commissions can be construed to impose any burden upon or to impede the free flow of interstate commerce. Bailey cannot be held to be exempt from payment of the taxes in question merely because it may be a fact that its business, in some remotely incidental way, relates to or involves interstate commerce.
Counsel for Bailey state that Pennywitt v. Blue, 73 W.Va. 718, 81 S.E. 399, decided in 1914, represents the law of this state and that it should control the decision of the present case. Pennywitt, the taxpayer, was engaged in a merchandise brokerage business involving exclusively citizens and business firms in Charleston, West Virginia, on the one hand, and, on the other hand, involving persons, firms and corporations doing business in states other than West Virginia. Pennywitt's clients were nonresident sellers from whom he arranged sales of merchandise to resident purchasers. His place of business in this state was an office in which he kept samples of goods for which he negotiated sales by his nonresident clients to resident merchants. He negotiated no sales from resident sellers to resident buyers. The case involved the propriety, under the commerce clause, of an annual license tax upon his brokerage business. This Court held, in the third point of the syllabus, that Pennywitt's brokerage business was "an instrumentality of interstate commerce" and that, therefore, imposition and collection of the state license tax "would be tantamount to a state tax upon interstate commerce or state regulation thereof" in contravention of the commerce clause of the Constitution.
We note, by way of distinguishing the facts of the Pennywitt case from the facts of the present case, that Pennywitt did no business with resident sellers; and that the tax imposed upon his business was an annual license fee, as distinguished from the privilege tax, or business and occupation tax, imposed on Bailey's gross earnings in form of commissions paid to him for services performed in this state in behalf of his nonresident clients. We believe the *693 Arslain case is more persuasive and should furnish a far more reliable guide in our decision of the present case because the Arslain decision was made more than thirty years after the decision of the Pennywitt case. The statement by the Court that Pennywitt's business was "an instrumentality of" interstate commerce leaves something to be desired from the standpoint of clarity and lucidity. Counsel for Bailey quote the following statement from the Pennywitt case: "Any state burden of any kind upon interstate commerce, unless incident in some way to the exercise of the state's police power or authorized by the Congress, is unconstitutional and void." (Italics supplied.) In their brief, counsel assert that the commerce clause "provides, in effect, that a state may not levy a tax or place a burden of any kind upon interstate commerce." (Italics supplied.) We believe that the statements we have emphasized, in the quotations appearing immediately above, are too broad and not sustained by more recent decisions of the Supreme Court of the United States.
A summary of federal court decisions was made by this Court in the Arslain case as follows (126 W.Va. 884-885, 30 S.E.2d 535-536): "Interstate transportation of property is not always a sufficient indicium to characterize transactions as interstate commerce. If the transportation across state lines is in aid of, or incidental to, intrastate activities, the assessment by a state of a privilege tax measured by gross income from such activities is not an impediment to, regulation of, or burden on interstate commerce. Department of Treasury v. Ingram-Richardson Mfg. Co., 313 U.S. 252, 61 S.Ct. 866, 85 L.Ed. 1313; Western Live Stock v. Bureau of Revenue, supra." The taxpayers in the Arslain case, as a routine part of their businesses conducted in this state, regularly transported tangible items of property across the state line to and from the State of Ohio, and apparently on a considerable scale. On the contrary, it does not appear in the present case that Bailey, in the performance of its services within this state, transported any tangible items of property across any state line or that performance of its business ever required any of its officers, agents, or employees to go outside West Virginia.
Western Live Stock et al. v. Bureau of Revenue et al., 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823, involved a privilege tax (as in the present case) levied by the State of New Mexico upon the gross amount received by a resident engaged in a business of publishing newspapers and magazines. The constitutional question presented was whether, in the light of the commerce clause, it was lawful for the state to levy and collect such a tax on the gross amount received by the taxpayer from advertising furnished to nonresident advertisers in one of its journals published within the taxing state. The contracts with nonresident advertisers involved interstate transmission from the advertisers of cuts, mats, information, copy, etc., and payment for the cost of the advertisement so furnished. The journal in which the advertisement was furnished was circulated both intrastate and interstate. The Supreme Court of the United States held that imposition and collection of the tax by the State of New Mexico did not violate the commerce clause of the Constitution. We will refrain from extended quotation from the opinion in this case, but, nevertheless, we would like to emphasize our view that it clearly sustains the constitutional validity of the tax in the present case. The court reiterated its position that even interstate business "must pay its way," and stated that it was "not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of state tax burden even though it increases the cost of doing the business."
In the Western Live Stock case, the court stated that the vice characteristic of state taxes which violate the commerce clause "is that they have placed on the commerce burdens of such a nature as to be capable in point of substance, of being imposed * * with equal right by every state which the *694 commerce touches, merely because interstate commerce is being done, so that without the protection of the commerce clause it would bear cumulative burdens not imposed on local commerce." At another place in the opinion, the court stated: "As we have said, the carrying on of a local business may be made the condition of state taxation, if it is distinct from interstate commerce, and the business of preparing, printing and publishing magazine advertising is peculiarly local and distinct from its circulation whether or not that circulation be interstate commerce." At still another place in its opinion, the court stated: "The tax is not one which in form or substance can be repeated by other states in such manner as to lay an added burden on the interstate distribution of the magazine."
In Washington-Oregon Shippers Cooperative Association, Inc. v. Schumacher et al. (1962), 59 Wash.2d 159, 367 P.2d 112, the court, in a case we consider in point, reviewed in a thorough way decisions of the Supreme Court of the United States and stated some conclusions which we believe to be sound and also pertinent to a proper decision of the present case. The Association was referred to in the opinion as WOSCA and it will be so referred to in this opinion. It was a nonprofit Washington corporation with a membership of 119 business entities with principal places of business in Washington and Oregon. Each member was engaged in a type of business which involved the acquisition and transportation of goods or products from sources outside the State of Washington. WOSCA was formed to provide services or means whereby members were able to consolidate shipments in order to gain the cost advantage of shipments in volume, usually at carload rates. WOSCA handled no shipments originating in Washington and its services were available only to its members. Each member (independently of WOSCA) ordered commodities it desired from sellers in states other than Washington. The consequent shipments were consolidated with other shipments in carload lots which were shipped to members in care of WOSCA at convenient points in Washington or Oregon. This case involved only the shipments to points in Washington. The tax in question was levied on gross earnings by WOSCA for services to its Washington members. In upholding the validity of the tax, the court made the following summarization of decisions of the Supreme Court of the United States: "Since the decision in Western Live Stock v. Bureau of Internal Revenue (1938), 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823, the primary considerations for determining the limits of a state's power to tax activities connected with interstate commerce have been these: (1) Whether the tax places an extra burden on interstate commerce not borne by intrastate commerce, or erects barriers, placing out-of-state businesses at a disadvantage when competing locally; the discrimination test. (2) Whether the interstate commerce involved is subject to the risk of repeated exactions of the same nature from other states; the multiple burden test. That the latter has become increasingly important is shown by Northwestern States Portland Cement Co. v. State of Minnesota (1959), 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed. 2d 421." These two salient tests were discussed at some length and the court held that the tax imposed in that case met both tests.
In re Taxas, etc., 46 Haw. 269, 379 P.2d 336, is regarded as helpful in arriving at a correct decision in the present case, not only because of the analogous factual situation involved, but also because of the careful review made by the Supreme Court of Hawaii of pertinent decisions of the Supreme Court of the United States. The taxpayer in that case, a resident of the State of Hawaii, maintained his place of business in that state. He was engaged in a business of performing services to mainland manufacturers of tangible goods whereby orders were obtained from resident buyers for goods to be sold by the mainland manufacturers and shipped by them to the purchasers in the State of *695 Hawaii. The taxpayer kept at his place of business samples of the manufactured goods in order to facilitate sales by the mainland manufacturers to the resident purchasers. Goods were shipped directly from the mainland manufacturers to the resident buyers. The taxpayer was paid commissions by the manufacturers upon orders obtained by the taxpayer. The question presented for decision was whether a tax imposed by the State of Hawaii upon the gross amount earned by the taxpayer in form of commissions violated the commerce clause of the Constitution.
In holding that the tax was constitutional, the Supreme Court of Hawaii stated that the taxpayer incorrectly assumed "that all state action affecting interstate transactions" violates the commerce clause and in that connection the court quoted the following language from Nippert v. City of Richmond, 327 U.S. 416, 425, 66 S.Ct. 586, 590, 90 L.Ed. 760: "As has been so often stated but nevertheless seems to require constant repetition, not all burdens upon commerce, but only undue or discriminatory ones, are forbidden." (Italics supplied.) The court also quoted language from Ficklen v. Taxing Dist. of Shelby County, 145 U.S. 1, 12 S.Ct. 810, 36 L.Ed. 601, a case analogous to our present case. A portion of the language quoted by the court is as follows: "This tax is not on the goods, or on the proceeds of the goods, nor is it a tax on nonresident merchants; and, if it can be said to affect interstate commerce in any way, it is incidentally, and so remotely as not to amount to a regulation of such commerce."
The tax involved in the present case does not discriminate against interstate commerce. We are unable to perceive how any other state could impose a tax upon Bailey, the resident taxpayer, and hence there is no basis for the possibility of "multiple burden" of taxation. Even if it can be said that the tax in question affects interstate commerce in any way, it is of such an indirect, incidental and remote nature and degree that it cannot be regarded as imposing any undue or unconstitutional burden on interstate commerce.
For reasons stated in this opinion, the Court holds that the tax in question does not violate the commerce clause contained in Article I, Section 8 of the Constitution of the United States; and, therefore, the judgment of the Circuit Court of Kanawha County is reversed.
Reversed.
BERRY, Judge (concurring).
I concur in the majority opinion in the disposition of this case, but I am of the opinion that the case of Pennywitt v. Blue, 73 W.Va. 718, 81 S.E. 399, and any other cases decided by this Court which might indicate that income from personal services performed within this State could not be taxed by the State because such services were a burden on or discriminated against interstate commerce even though commissions were paid to a resident of the State by nonresidents of the State for his services in obtaining orders for such goods or merchandise, should be specifically overruled in an effort to clarify to this extent a somewhat confused situation.
I am of the opinion that it makes no difference whether the tax is for a license to do business, a gross sales or business and occupational tax or an income tax. The State should not be prohibited from taxing its citizens or resident corporations for the privilege of doing business within the State because the income therefrom is derived from orders taken by them from others doing business within the State. It is true that the individuals or companies shipping the goods or merchandise sold into the State from another state should not be taxed by the State because that would clearly be a burden on or a discrimination against interstate commerce in violation of the commerce clause of the Federal Constitution, Article I, Section 8; but prohibiting the taxing of its citizens on income derived from personal services in selling the goods, all of which was done wholly within *696 the State, does not in my opinion burden interstate commerce.
It would appear that the taxpayer in the case at bar was an independent contractor and not an agent of the nonresident owner or shipper of the goods and merchandise.
The case at bar is different in principle from the recent case of State ex rel. Battle, State Tax Commissioner v. Baltimore and Ohio Railroad Company, a Corporation, (two cases), 149 W.Va. 810, 143 S.E. 2d 331, wherein a transportation privilege tax imposed by the State was held to violate the commerce clause of the Federal Constitution, Article I, Section 8, because it was a tax imposed upon the income of a foreign corporation engaged in interstate commerce, which was derived in the main from the interstate transportation of material by the railroad.
HAYMOND, Judge (dissenting):
It is my considered opinion that the decision of the majority in this case, which reverses the judgment of the Circuit Court of Kanawha County holding that the tax in question contravenes the Commerce Clause, Article I, Section 8 of the Constitution of the United States, and directing the State Tax Commissioner to refund to the defendant taxpayer the sum of $1125.09, unlawfully collected, is erroneous in that it is unsound in principle and is contrary to applicable prior decisions of this Court and of the Supreme Court of the United States and, in consequence, I register this dissent.
The undisputed facts, embraced in a written stipulation between the State Tax Commissioner and the taxpayer, show clearly that the business activities, which have produced the gross receipts upon which the alleged unlawfully exacted taxes were paid, have been conducted by the taxpayer exclusively with and have been limited to manufacturers and food processors located outside the State of West Virginia and citizens and business firms located within the State of West Virginia; that the income and gross receipts of the taxpayer consist entirely of commissions received by it from and are based on the purchase price paid to manufacturers and food processors from sales of merchandise to citizens and business firms located in this State; that such sales result directly from the performance by the taxpayer of its business activities; and that approximately 90% of the gross business of the taxpayer is transacted with manufacturers and food processors located outside the State of West Virginia.
The undisputed facts also show that the business activities of the taxpayer consist in soliciting orders of merchandise for manufacturers and food processors from wholesalers and chain-store operators located in West Virginia; that the result of such orders when accepted by the manufacturers and food processors located outside West Virginia for sale of merchandise to purchasers located in West Virginia is the shipment by common carrier of such merchandise by such manufacturers and food processors in interstate commerce and its delivery to purchasers in West Virginia; that the preparation of the orders occurs in West Virginia and the billing for such merchandise is sent directly to the West Virginia purchasers by such manufacturers and food processors, to which payment is made by such purchasers; and that the taxpayer does not purchase any of such merchandise.
From the foregoing facts it is manifest that the taxpayer, by placing orders from purchasers in West Virginia with manufacturers and food processors outside this State for merchandise to be delivered to such purchasers, negotiates sales of goods in another state for the purpose of introducing and importing them into this State, engages directly in the sales of goods in interstate commerce and causes the goods so solicited and sold to be transported in such commerce between the out-of-state manufacturers and food processors and the West Virginia purchasers; and it is clear beyond question that the negotiation of such sales of goods for the purpose of introducing them into this State and the subsequent *697 transportation of such goods from another state into this State constitute interstate commerce. This Court has so held in at least two cases, one of which, a unanimous decision, Bluefield Produce and Provision Company v. City of Bluefield, 120 W.Va. 111, 196 S.E. 568, has never been questioned or overruled and which, strange as it may seem and for no stated reason, has not even been cited or discussed in the majority opinion.
In the Bluefield case an ordinance of the City of Bluefield provided that every person, firm, corporation, association or copartnership, opening, establishing, operating or maintaining a store or stores within its corporate limits should pay to the city a license tax for each such store for the required license on the basis that "If such store be one in which goods, wares, or merchandise of any kind or character are sold at wholesale, said tax shall be equal to one-sixth of 1% of the gross proceeds of sales of such store, payable as hereinafter provided; * * *". The plaintiffs, who sought to enjoin the City of Bluefield and its board of directors and officers from cancelling licenses under which the plaintiffs owned and operated wholesale stores in that city, made sales of goods in the city, some of which were delivered to purchasers in West Virginia and others of which were delivered to purchasers outside West Virginia. This Court held that sales made from the stores in Bluefield of goods which were actually delivered to purchasers outside the municipality but within the State could be included in the gross proceeds of sales from which the tax was computed but that sales of goods which were actually delivered to purchasers outside this State could not be included in fixing the gross proceeds of sales from which the tax was computed and that neither the State of West Virginia nor the municipality could impose the tax on sales or transactions in interstate commerce. In the opinion this Court said: "That a state may not, through its powers of taxation or otherwise, directly or through its agencies, regulate or impose a direct burden upon interstate commerce, is so well settled that citation of authority would seem to be unnecessary. While, as stated above, the operation and maintenance of stores is the activity taxed, the amount of the tax is ascertained on the basis of all sales, without regard to state lines, and the effect thereof is to impose a tax on sales or transactions in interstate commerce. This state, in the administration of its privilege taxes, has recognized its lack of power to tax transactions in interstate commerce, and it can scarcely be said that its creature, the municipality of Bluefield, may impose a tax which the state, in its sovereign right, has not sought to impose. * * * The reason for the rule against the imposition of any character of burden upon interstate commerce is well known; its maintenance is vital to the free exchange of commerce between the states, and should not be lightly ignored, even in a matter of relative unimportance. In Crew Levick Company v. Pennsylvania, 245 U.S. 292, 38 S.Ct. 126, 62 L.Ed. 295, it was held that: `A state tax imposed upon the business of selling goods in foreign commerce, the amount of which is measured by the gross receipts, is unconstitutional as a regulation of foreign commerce and also as an impost upon exports, levied without the consent of Congress.' In that case the State of Pennsylvania imposed an annual mercantile license tax of `$3 upon each wholesale vender of or dealer in goods, wares, and merchandise, and "one-half mill additional on each dollar of the whole volume, gross, of business transacted, annually",' and also imposed other similar taxes on other businesses at different rates. And in Matson Navigation Company v. California, 297 U.S. 441, 56 S.Ct. 553, 80 L.Ed. 791, a state tax on gross earnings derived from interstate commerce was held to be a burden upon that commerce and repugnant to the commerce clause of the Federal Constitution. In view of these authorities, which might be supplemented by many others, and the recognized rule which seeks to encourage commerce *698 between the states, free from any state imposed burdens directly affecting the same, and the methods followed by this state in the administration of its legislation imposing taxes of a similar nature, we feel impelled to hold that the ordinance in question is invalid so far as it seeks to impose upon the plaintiffs the obligation to report, as a part of their gross proceeds of sales at their respective stores, sales made by actual delivery of commodities to persons residing outside this state."
In the other and later case of Harper v. Alderson, 126 W.Va. 707, 30 S.E.2d 521, 153 A.L.R. 819, which the majority, in a patently labored but unsuccessful effort, seeks to distinguish from the case at bar, and in which was involved the furnishing of linen and other like articles to users for pay followed by a reclaiming of the articles furnished and a laundering of them in preparation for further use by customers in general, this Court held in point 2 of the syllabus that such chattels furnished for hire by an owner from a point in one state to users at a point in another state and which required and resulted in the movement of such chattels across a state line constituted interstate commerce and in point 3 of the syllabus also held that "income from interstate commerce is not to be included in the gross income on which is based the state tax levied on one for the privilege of engaging in or carrying on a business within this State."
In the opinion in the Harper case, approving the decision in the Bluefield case, this Court said: "Gross income from which a tax for the privilege of carrying on a business in this State is computed, cannot include income from interstate business. We consider this proposition settled definitely by the case of Bluefield Produce and Provision Company v. City of Bluefield, 120 W.Va. 111, 196 S.E. 568, 569. That case involved an ordinance of the City of Bluefield creating a license tax on all stores operating within the corporate limits of the City, the amount of which was fixed at `one-sixth of 1% of the gross proceeds of sales of such store'. We held that: `In the administration of an ordinance of a municipality imposing a license tax on the "opening, establishing, operating or maintaining" of stores therein, based on the "gross proceeds of sales of such stores", sales made from a store licensed thereunder effected by actual delivery to purchasers outside the municipality, and outside this state, may not be included in fixing the gross proceeds of sales from which the tax is computed, the same being in violation of Sections 8 and 10 of Article I of the Constitution of the United States.' This decision is in exact accord with many express decisions of the Supreme Court of the United States. Gwin, White & Prince v. Henneford, 305 U.S. 434, 435, 59 S.Ct. 325, 83 L.Ed. 272; Matson Navigation Co. v. State Board of Equalization of California, 297 U.S. 441, 56 S.Ct. 553, 80 L.Ed. 791; Cooney v. Mountain States Telephone & Telegraph Company, 294 U.S. 384, 55 S.Ct. 477, 79 L.Ed. 934; East Ohio Gas Company v. Tax Commissioner, 283 U.S. 465, 51 S.Ct. 499, 75 L.Ed. 1171; American Manufacturing Company v. City of St. Louis, 250 U.S. 459, 39 S.Ct. 522, 63 L.Ed. 1084; Crew-Levick Company v. Commonwealth of Pennsylvania, 245 U.S. 292, 38 S.Ct. 126, 62 L.Ed. 295. It is true that in the Bluefield case only sales in interstate commerce were involved; but the case was decided, not upon the fact that the transactions were sales, but by reason of their being interstate commerce."
In the earlier case of Pennywitt v. Blue, 73 W.Va. 718, 81 S.E. 399, which the majority, in effect, ignored and disregarded, this Court held that a brokerage business, which dealt exclusively in interstate commerce, was an instrumentality of interstate commerce and that a state tax upon such business would be tantamount to a state tax upon interstate commerce or a state regulation of interstate commerce, which is forbidden by the commerce clause of the Constitution of the United States. Despite the scant consideration given the holding in the Pennywitt case in the opinion *699 of the majority, the holding of this Court in that case was approved by this Court in the later case of Eureka Pipe Line Company v. Hallanan, 87 W.Va. 396, 105 S.E. 506, 257 U.S. 265, 42 S.Ct. 101, 66 L.Ed. 227, in which this Court said in the opinion: "That a state cannot levy any tax upon interstate commerce, or charge any license for the privilege of engaging in such commerce within the state, is the uniform doctrine of this Court, as well as the Supreme Court of the United States. Pennywitt v. Blue, 73 W.Va. 718, [81 S.E. 399]; Crutcher v. Kentucky, 141 U.S. 47 [11 S.Ct. 851, 35 L.Ed. 649]; Robbins v. Shelby County Taxing District, 120 U.S. 489 [7 S.Ct. 592, 30 L.Ed. 694]. The doctrine of these cases has been repeatedly asserted by the Supreme Court of the United States, and, indeed, is not questioned by counsel for the defendants here."
The general rule is stated in 15 C.J.S. Commerce, Section 115, in these terms: "In general, it is without the power of the state or municipality to exact license fees from agents engaged solely in interstate commerce or dealing in goods which are subjects of interstate commerce at the time of the imposition of the tax,". Though the principle applied in the Pennywitt case, and stated in the foregoing quotation, relates to brokers or agents engaged solely in interstate commerce, it directly applies to transactions in interstate commerce engaged in by such brokers or agents and to that extent governs the interstate transactions conducted by the defendant.
In Crenshaw v. State of Arkansas, 227 U.S. 389, 33 S.Ct. 294, 57 L.Ed. 565, the Court, citing Robbins v. Shelby County Taxing District, 120 U.S. 489, 75 S.Ct. 592, 30 L.Ed. 694, said that the negotiation of sales of goods which are in another state, for the purpose of introducing them in the state in which the negotiation is made, is interstate commerce. In the more recent case of Memphis Steam Laundry Cleaner, Inc. v. Stone, 342 U.S. 389, 72 S.Ct. 424, 96 L.Ed. 436, the Court, referring to a state privilege tax, said in headnote 1 that if the tax be imposed upon the privilege of soliciting interstate business, it stands on no better footing than a tax on the privilege of doing interstate business, and is invalid under the commerce clause of the federal constitution. In the opinion the Court used this language: "In the long line of `drummer' cases, beginning with Robbins v. Shelby County Taxing District, 120 U.S. 489, 75 S.Ct. 592 (1887), this Court has held that a tax imposed upon solicitation of interstate business is a tax upon interstate commerce itself. Whether or not solicitation of interstate business may be regarded as a local incident of interstate commerce, the Court has not permitted state taxation to carve out this incident from the integral economic process of interstate commerce. As the Court noted last term in a case involving door-to-door solicitation of interstate business, `Interstate commerce itself knocks on the local door.'" See also Corson v. State of Maryland, 120 U.S. 502, 7 S.Ct. 655, 30 L.Ed. 699; Asher v. Texas, 128 U.S. 129, 9 S.Ct. 1, 32 L.Ed. 368; Stoutenburgh v. Hennick, 129 U.S. 141, 9 S.Ct. 256, 32 L.Ed. 637; Brennan v. Titusville, 153 U.S. 289, 14 S.Ct. 829, 38 L.Ed. 719; Stockard v. Morgan, 185 U.S. 27, 22 S.Ct. 576, 46 L.Ed. 785; Caldwell v. North Carolina, 187 U.S. 622, 23 S.Ct. 229, 47 L.Ed. 336; Rearick v. Pennsylvania, 203 U.S. 507, 27 S.Ct. 159, 51 L.Ed. 295; International Textbook Company v. Pigg, 217 U.S. 91, 30 S.Ct. 481, 54 L.Ed. 678, 27 L.R.A., N.S., 493; Dozier v. Alabama, 218 U.S. 124, 30 S.Ct. 649, 54 L.Ed. 965, 28 L.R.A., N.S., 264; Rogers v. Arkansas, 227 U.S. 401, 33 S.Ct. 298, 57 L.Ed. 569; Stewart v. Michigan, 232 U.S. 665, 34 S.Ct. 476, 58 L.Ed. 786; Davis v. Virginia, 236 U.S. 697, 35 S.Ct. 479, 59 L.Ed. 795; Cheney Brothers Company v. Massachusetts, 246 U.S. 147, 38 S.Ct. 295, 62 L.Ed. 632; Real Silk Hosiery Mills v. Portland, 268 U.S. 325, 45 S.Ct. 525, 69 L.Ed. 982; Best & Company, Inc. v. Maxwell, 311 U.S. 454, 61 S.Ct. 334, 85 L.Ed. 275; Nippert v. Richmond, 327 U.S. 416, 66 S.Ct. 586, 90 L.Ed. 760, 162 A.L.R. 844; *700 Breard v. Alexandria, 341 U.S. 622, 71 S. Ct. 920, 95 L.Ed. 1233, 35 A.L.R.2d 335.
It is clear beyond question that the transactions engaged in by the defendant taxpayer in negotiating and producing sales of out-of-state merchandise for the purpose of importing it into this State and its subsequent transportation in interstate commerce are interstate commerce transactions, that the commissions which it receives and which are subjected to the tax constitute income or earnings derived from interstate commerce, and that the tax presently imposed upon such income or earnings contravenes and is rendered invalid by the commerce clause, Article I, Section 8, of the Constitution of the United States.
I challenge as incorrect, in fact and in law, the statement in the majority opinion that the defendant Bailey "is not engaged in interstate commerce and, therefore, is not exempt from payment of the taxes in question, notwithstanding the fact that, as an incident of the proper performance of its service within this state, it transmits messages to and receives messages from the nonresident manufacturers and food processors and notwithstanding the fact that, after the goods are shipped by the nonresident sellers and received by resident buyers from time to time, Bailey receives, by United States mail, payment in this state of its commissions from the nonresident sellers. In final analysis, the interstate shipment of goods directly involves only the nonresident sellers and the resident buyers."
It is clear beyond question that there would have been no nonresident sellers, no resident buyers, and no interstate shipment of goods, with respect to the subject matter of this case, without the business activities of the defendant and that the sales and consequent interstate shipments of goods were produced by and resulted from the business activities and transactions conducted and engaged in by the defendant. The above quoted statement in the majority opinion is completely refuted by the decision of this Court in the recent case of Nuckols v. Athey, 149 W.Va. 40, 138 S.E.2d 344, and by the following quotations in the opinion in that case, which was prepared by the same judge who prepared the majority opinion in this case:
"`The word "commerce" as used in the Constitution of the United States has not a technical, but a practical, meaning. It is in no wise limited to sales but includes many other dealings between points in different states which produce a movement of goods across state lines.' Harper v. Alderson, 126 W.Va. 707, 713-14, 30 S.E.2d 521, 524, 153 A.L.R. 819. In United Shoe Repairing Machinery Co. v. Carney, 116 W. Va. 224, 226, 179 S.E. 813, 814, the Court stated:
"`The test of interstate commerce fixed by the federal courts is "importation into one state from another." They say further: "Every negotiation, contract, trade, and dealing between citizens of different states, which contemplates and causes such importation * * * is a transaction of interstate commerce." Ravenna Furnace and Heating Co. v. Cotts, 124 W.Va. 750, 22 S.E.2d 371, was a case in which a resident of West Virginia went to Ohio where he purchased a heating furnace for installation in his home in this state. The furnace was later delivered and installed by the seller. The Court held that "this was a sale in interstate commerce, * * *." See also Jennings v. Big Sandy & Cumberland Railroad, 61 W.Va. 664, pt. 2 syl., 57 S.E. 272.
"`The terms "commerce" "interstate commerce" and "commerce among the states" or "commerce among the several states" embrace business or commercial intercourse in any and all of its forms and branches and in all its component parts between citizens of different states, and may embrace purely social intercourse between citizens of different states, as over the telephone, telegraph, or radio, or the mere passage of persons from one state to another for social intercourse or pleasure. Indeed, commerce is said to include not only the fact of intercourse and traffic but also the subject matter *701 thereof, which may be either things, goods, chattels, merchandise, or persons.' 15 C.J.S. Commerce § 1, pages 257-258. See also 15 Am.Jur.2d, Commerce, Sections 2 and 3, pages 631-634. `The term "commerce" includes the purchase, sale, and exchange of goods. But in order for a sale or exchange of goods to constitute interstate commerce, there must be a transportation or shipment of commodities from one state to another.' 15 Am.Jur.2d, Commerce, Section 31, page 666."
In my opinion the decision of the majority is also contrary to the holding of this Court in the recent cases of State ex rel. Battle v. Baltimore and Ohio Railroad Company, 149 W.Va. 810, 143 S.E.2d 331; Norfolk and Western Railway Company v. Field, 143 W.Va. 219, 100 S.E.2d 796; and American Barge Line Company v. Koontz, 136 W.Va. 747, 68 S.E.2d 56.
The Battle case dealt with the privilege tax imposed by the State upon a foreign railroad corporation which was engaged in both interstate and intrastate business, and this Court held that such tax was invalid as violative of Article I, Section 8, the Commerce Clause, of the Constitution of the United States to the extent that it applied to the net income of the corporation received from interstate commerce.
In the Norfolk and Western Railway case, this Court said in point 5 of the syllabus that "A state is denied the power to tax the privilege of a railroad corporation to engage in interstate commerce though such commerce is within the borders of the state."
In the American Barge Line case, this Court held that a state privilege tax imposed on the gross income from the business of transporting passengers and freight by steamship to the extent that it applied to an apportioned percentage of the gross income derived from interstate transportation constituted an unreasonable burden upon interstate commerce, contravened the Commerce Clause of the Constitution of the United States, and was void. Though the foregoing three cases involved interstate commerce engaged in by railroad and steamship companies, the principle recognized and applied in each of them applies to and controls the decision in the case at bar.
The decision of the majority is also contrary to and inconsistent with numerous decisions of the Supreme Court of the United States cited or discussed in the opinion in the Battle case, some of which are Spector Motor Service, Inc. v. O'Connor, 340 U.S. 602, 71 S.Ct. 508, 95 L.Ed. 573; Norton Company v. Department of Internal Revenue of the State of Illinois, 340 U.S. 534, 71 S.Ct. 377, 95 L.Ed. 517; Joseph v. Carter and Weeks Stevedoring Company, 330 U.S. 422, 67 S.Ct. 815, 91 L.Ed. 993; Cooney v. Mountain States Telephone and Telegraph Company, 294 U.S. 384, 55 S.Ct. 477, 79 L.Ed. 934; Crew Levick Company v. Pennsylvania, 245 U.S. 292, 38 S.Ct. 126, 62 L.Ed. 295; Galveston, Harrisburg and San Antonio Railway Company v. Texas, 210 U.S. 217, 28 S.Ct. 638, 52 L.Ed. 1031; Philadelphia and Southern Mail Steamship Company v. Pennsylvania, 122 U.S. 326, 7 S.Ct. 1118, 30 L.Ed. 1200; Moran v. City of New Orleans, 112 U.S. 69, 5 S.Ct. 38, 28 L.Ed. 653.
In East Ohio Gas Company v. Tax Commission of Ohio, 283 U.S. 465, 51 S.Ct. 499, 75 L.Ed. 1171, the Court said: "It is elementary that a State can neither lay a tax on the act of engaging in interstate commerce nor on gross receipts therefrom. Pullman Co. v. Richardson, 261 U.S. 330, 338 [43 S.Ct. 366, 67 L.Ed. 682]. New Jersey [Bell] Tel. Co. v. Tax Board, 280 U.S. 338, 346 [50 S.Ct. 111, 74 L.Ed. 463]."
In the frequently cited case of Leloup v. Port of Mobile, 127 U.S. 640, 8 S.Ct. 1380, 32 L.Ed. 311, the Court held that a general license tax on a telegraph company affects its entire business, interstate as well as domestic or internal, and is unconstitutional, and that the property of a telegraph company, situated within a state, may be taxed by the state as all other property is taxed but that its business of an interstate character *702 can not be taxed. In the opinion the Court said: "no State has the right to lay a tax on interstate commerce in any form, whether by way of duties laid on the transportation of the subjects of that commerce, or on the receipts derived from that transportation, or on the occupation or business of carrying it on, and the reason is that such taxation is a burden on that commerce, and amounts to a regulation of it, which belongs solely to Congress. This is the result of so many recent cases that citation is hardly necessary."
In the recent case of Northwestern States Portland Cement Company v. Minnesota, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed. 2d 421, 67 A.L.R. 1292, in which it was held that the net income from an exclusively interstate operation of a foreign corporation may be subjected to taxation by a state, the Court differentiated a state income tax from a privilege tax, which is the type of tax involved in the case at bar, and indicated clearly that though a state income tax may be imposed upon profits received from interstate commerce a privilege tax may not be levied upon the receipts derived from such commerce. With respect to certain types of taxes including a state imposed privilege tax the Court said: "It has long been established doctrine that the Commerce Clause gives exclusive power to the Congress to regulate interstate commerce, and its failure to act on the subject in the area of taxation nevertheless requires that interstate commerce shall be free from any direct restrictions or impositions by the States. Gibbons v. Ogden, 9 Wheat. 1 [6 L.Ed. 23] (1824). In keeping therewith a State `cannot impose taxes upon persons passing through the state, or coming into it merely for a temporary purpose' such as itinerant drummers. Robbins v. [Shelby County] Taxing District, 120 U.S. 489, 493-494, [75 S.Ct. 592, 30 L. Ed. 694] (1887). Moreover, it is beyond dispute that a State may not lay a tax on the `privilege' of engaging in interstate commerce. Spector Motor Service v. O'Connor, 340 U.S. 602 [71 S.Ct. 508] (1951). Nor may a State impose a tax which discriminates against interstate commerce either by providing a direct commercial advantage to local business. Memphis Steam Laundry [Cleaner, Inc.] v. Stone, 342 U.S. 389, [72 S.Ct. 424] (1952); Nippert v. Richmond, 327 U.S. 416, [66 S.Ct. 586] (1946), or by subjecting interstate commerce to the burden of `multiple taxation,' Michigan-Wisconsin Pipe Line Co. v. Calvert, 347 U.S. 157 [74 S.Ct. 396, 98 L.Ed. 583] (1954); Adams Mfg. Co. v. Storen, 304 U.S. 307, [58 S.Ct. 913, 82 L.Ed. 1365] (1938). Such impositions have been stricken because the States, under the Commerce Clause, are not allowed `one single-tax-worth of direct interference with the free flow of commerce.' Freeman v. Hewit, 329 U.S. 249, 256 [67 S.Ct. 274, 91 L.Ed. 265] (1946)."
It should be observed that the many decisions of the Supreme Court of the United States relating to the imposition of state and local taxes upon persons engaged in interstate commerce indicate clearly that ad valorem taxes upon property within the area of its use and income taxes upon the profits derived from such commerce are valid and are generally recognized as a method by which such interstate operators comply with the requirement that interstate business must pay its way. See Northwestern States Portland Cement Company v. Minnesota, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421, 67 A.L.R.2d 1292; Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823; Memphis Natural Gas Company v. Beeler, 315 U.S. 649, 62 S.Ct. 857, 86 L.Ed. 1090; Underwood Typewriter Company v. Chamberlain, 254 U.S. 113, 41 S.Ct. 45, 65 L.Ed. 165; United States Glue Company v. Town of Oak Creek, 247 U.S. 321, 38 S.Ct. 499, 62 L.Ed. 1135, Ann.Cas. 1918E 748; Peck & Company, Incorporated v. Lowe, 247 U.S. 165, 38 S.Ct. 432, 62 L.Ed. 1049; Galveston, Harrisburg and San Antonio Railway Company v. Texas, 210 U.S. 217, 28 S.Ct. 638, 52 L.Ed. 1031; Old Dominion Steamship Company v. Virginia, 198 U.S. 299, 25 S.Ct. *703 686, 49 L.Ed. 1059; Adams Express Company v. Kentucky, 166 U.S. 171, 17 S.Ct. 527, 41 L.Ed. 960; Adams Express Company v. Ohio State Auditor, 165 U.S. 194, 17 S.Ct. 305, 41 L.Ed. 683; Cleveland, Cincinnati, Chicago and St. Louis Railway Company v. Backus, 154 U.S. 439, 14 S.Ct. 1122, 38 L.Ed. 1041; Western Union Telegraph Company v. Attorney General, 125 U.S. 530, 8 S.Ct. 961, 31 L.Ed. 790. It appears to be settled beyond dispute, however, that a state may not impose a tax upon the privilege of engaging in interstate commerce. See Northwestern States Portland Cement Company v. Minnesota, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421, 67 A.L.R.2d 1292; Michigan-Wisconsin Pipe Line Company v. Calvert, 347 U.S. 157, 74 S.Ct. 396, 98 L.Ed. 583; Norton Company v. Department of Revenue of Illinois, 340 U.S. 534, 71 S.Ct. 377, 95 L.Ed. 517; Spector Motor Service, Inc. v. O'Connor, 340 U.S. 602, 71 S.Ct. 508, 95 L.Ed. 573; Joseph v. Carter and Weeks Stevedoring Company, 330 U.S. 422, 67 S.Ct. 815, 91 L.Ed. 993; Gwin, White and Prince v. Henneford, 305 U.S. 434, 59 S.Ct. 325, 83 L.Ed. 272; Matson Navigation Company v. State Board of Equalization of California, 297 U.S. 441, 56 S.Ct. 553, 80 L.Ed. 791; Cooney v. Mountain States Telephone and Telegraph Company, 294 U.S. 384, 55 S.Ct. 477, 79 L.Ed. 934; East Ohio Gas Company v. Tax Commission of Ohio, 283 U.S. 465, 51 S.Ct. 499, 75 L.Ed. 1171; Sprout v. City of South Bend, 277 U.S. 163, 48 S.Ct. 502, 72 L.Ed. 833, 62 A.L.R. 45; Eureka Pipe Line Company v. Hallanan, 257 U.S. 265, 42 S.Ct. 101, 66 L.Ed. 227; Crew Levick Company v. Pennsylvania, 245 U.S. 292, 38 S.Ct. 126, 62 L.Ed. 295; Galveston, Harrisburg and San Antonio Railway Company v. Texas, 210 U.S. 217, 28 S.Ct. 638, 52 L.Ed. 1031; Allen v. Pullman's Palace Car Company, 191 U.S. 171, 24 S.Ct. 39, 48 L.Ed. 134; Crutcher v. Kentucky, 141 U.S. 47, 11 S.Ct. 851, 35 L.Ed. 649; Leloup v. Port of Mobile, 127 U.S. 640, 8 S.Ct. 1380, 32 L.Ed. 311; Philadelphia and Southern Mail Steamship Company v. Pennsylvania, 122 U.S. 326, 7 S.Ct. 1118, 30 L.Ed. 1200; Robbins v. Shelby County Taxing District, 120 U.S. 489, 7 S.Ct. 592, 30 L.Ed. 694; Moran v. New Orleans, 112 U.S. 69, 5 S.Ct. 38, 28 L. Ed. 653.
The amazingly extensive scope of the application of the commerce clause of the Constitution of the United States to apparently local activities and transactions is indicated by the recent case of Katzenbach v. McClung, 379 U.S. 294, 85 S.Ct. 377, 13 L. Ed.2d 290, in which the Court said that restaurants offering to serve interstate travelers or serving food, a substantial portion of which has moved in interstate commerce, are subject to regulation under the commerce clause.
The majority bases its erroneous conclusion, in large measure, upon the cases of Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823; Washington-Oregon [Shippers] Cooperatives Association v. Schumacher, 59 Wash.2d 159, 367 P.2d 112; and Arslain v. Alderson, 126 W.Va. 880, 30 S.E.2d 533. The Western Live Stock case is not in point and is clearly distinguishable from the case at bar because, as the opinion in the Western Live Stock case indicates, the sale of advertising space, both within and without the state, upon the receipts from which the state tax was levied, was merely incidental to the principal business of the taxpayer, which was the publication and circulation of a magazine and not the sale of advertising space to some nonresidents of the state. In that respect the case resembles the Arslain case, in which this Court held that the carriage of articles of clothing across state lines was merely incidental to the taxpayers' principal local business of cleaning and repairing articles owned by the customers of the taxpayers and that the services in that respect were performed entirely within this State. In the opinion this Court said: "Bearing in mind that the services performed by plaintiffs are activities carried on in the State of West Virginia and that the transportation of the articles on which work is done is only in aid of the primary purpose, we conclude that the assessment and collection of the privilege *704 tax on the businesses of plaintiffs do not contravene Article I, Section 8 of the Constitution of the United States." The differentiating factor in the case at bar from the incidental activities involved in the Western Live Stock case and the Arslain case is that the principal business of the defendant taxpayer is the negotiation of sales of merchandise for transportation in interstate commerce. The Washington-Oregon case is likewise not in point for the reason that the facts, as stated in the Court's opinion, show that the taxpayer made no purchases or sales in interstate commerce and that the only real activity which it performed was that of entering into contractual agreements with independent contractors who performed the work of the taxpayer except its activities with respect to corporate policy and planning decisions. The opinion also states that though some of the contracts of the taxpayer concerned activities which occurred outside the state, it was not engaged in those activities but procured them as a service for its members, and that the performance of such service was a local activity even though it was rendered in connection with an interstate transaction.
The majority also seeks support for its conclusion from the decision of the Supreme Court of Hawaii in the case of In re Taxes, Armstrong Perry, 46 Haw. 269, 279 P.2d 336, in which the Court held that commission earned by a resident of Hawaii, who was a representative of a foreign manufacturer, for services performed in obtaining local orders was subject to a general excise tax and that the imposition of such tax was not discriminatory and did not place an undue burden on interstate commerce. In reaching its decision the Hawaii Court relied upon the Western Live Stock case which, as already indicated, is not here in point, and the case of Ficklen v. Shelby County Taxing District, 145 U.S. 1, 12 S.Ct. 810, 36 L.Ed. 601, which this Court, in the Pennywitt case, distinguished and refused to follow for reasons set out at length in the opinion in the Pennywitt case. In discussing the question involved in the Pennywitt case and in referring to the cases of Stockhard v. Morgan, 185 U.S. 27, 22 S.Ct. 576, 46 L.Ed. 785, and Ficklen v. Shelby County Taxing District, 145 U.S. 1, 12 S.Ct. 810, 36 L.Ed. 601, this Court said: `The case falls exactly within the principle declared as follows, in Stockhard v. Morgan, 185 U.S. 27 [22 S.Ct. 576]; `All the cases cited in the opinion of the court deny the right of a State to tax people representing owners of property outside the State for the privilege of soliciting orders within it, as agents of such owners, for property to be shipped to persons within the State.' The application of Ficklen v. Shelby County Taxing District, 145 U.S. [12 S.Ct. 810], as a precedent for the right here claimed by the State is utterly destroyed by" certain observations of Justice Peckham in the Stockhard case which are set out at length in the opinion in the Pennywitt case. If, however, the In Re Taxes, Armstrong Perry, and Washington-Oregon cases should be considered in point, they should be regarded merely as persuasive authority and not given controlling effect over the decisions of this Court, and the action of the majority in according them controlling force and effect, to the exclusion and in disregard of the numerous cited contrary decisions of this Court, as well as the decisions of the Supreme Court of the United States, upon the questions here involved, is, indeed, surprising and is of grave concern with respect to the relative force and effect to be accorded the decisions of this Court as compared to those of an appellate court of another jurisdiction.
Though as previously indicated I emphatically disagree with the conclusion reached by the majority, I agree with the statement in the majority opinion, supported by cited authority, that in considering whether a state law violates the commerce clause of the Federal Constitution, this Court must yield to the decisions of the Supreme Court of the United States. Though the majority expressly recognizes that firmly established legal principle, it has failed to apply it or give it force and effect in the *705 decision of the case at bar. At least two cases decided by the Supreme Court which have never been departed from or overruled and one of which has been cited with approval in the comparatively recent cases of Northwestern States Portland Cement Company v. Minnesota, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421, 67 A.L.R.2d 1292, decided in 1959, and Memphis Steam Laundry Cleaner, Inc. v. Stone, 342 U.S. 389, 72 S.Ct. 424, 96 L.Ed. 436, decided in 1952, both of which are more recent than the relied on case of Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 832, decided in 1938, were not considered, discussed or even mentioned in the majority opinion. Those two completely ignored cases are directly in point and should have been followed and given controlling effect, and should have required this Court in the case at bar to hold the tax here involved invalid as a burden on interstate commerce in violation of the commerce clause of the Federal Constitution. The two cases to which I refer are the frequently cited cases of Robbins v. Shelby County Taxing District, 120 U.S. 489, 75 S.Ct. 592, 30 L.Ed. 694, and Crenshaw v. Arkansas, 227 U.S. 389, 33 S.Ct. 294, 57 L.Ed. 565. In the Crenshaw case the headnote contains this pertinent language, which directly applies to the undisputed facts in this case: "The negotiation of sales of goods which are in another State, for the purpose of introducing them in the State in which the negotiation is made, is interstate commerce. Robbins v. Shelby County Taxing District, 120 U.S. 489, [75 S.Ct. 592]." In the opinion in the Robbins case is this identical and clearly applicable statement: "The negotiation of sales of goods which are in another state, for the purpose of introducing them into the state in which the negotiation is made, is interstate commerce." Adherence to, instead of disregard of, the legal principle expressly stated in the majority opinion that this Court must yield to the decisions of the Supreme Court in determining whether a state law violates the commerce clause of the Federal Constitution, should have required this Court to avoid its erroneous decision and to affirm the judgment of the Circuit Court of Kanawha County.
For the reasons stated and under the authorities discussed and cited in this opinion I would affirm the holding of the Circuit Court of Kanawha County and hold the tax upon the commissions received by the taxpayer from sales in interstate commerce to be invalid as a burden upon such commerce.